## GARY v. BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM OF MARYLAND

[No. 51, September Term, 1960.]

*Decided November 11, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Melvin J. Sykes,* for appellant.

*Mary Arabian, Assistant Attorney General,* with whom
was *C. Ferdinand Sybert, Attorney General,* on the brief, for
appellee.

HAMMOND, J., delivered the opinion of the Court.

Benjamin Gary, the appellant, served as deputy State audi-
tor from 1951 to January 1959 and by virtue of his position
was a member of the Employees' Retirement System. Just
before he was to leave State service, he applied for continua-
tion of his membership in the retirement system, relying on
Code (1957), Art. 73B, Sec. 4, which provides that any
member of the retirement system who is "currently a member
by virtue of being an elected or appointed official" has the
option to continue membership following the end of the term
of office for which he was last elected or appointed, contingent
upon his continuing to pay all sums which would have been

due by him and by the State if he had continued to be a member by virtue of holding elective or appointed office.

His application was turned down on the ground he was not an official, and his petition for mandamus to require the retirement system to recognize his claimed rights followed soon after he had left State service, and was denied by Judge Harlan.[1]

The parties agree that the question the case presents is whether the deputy State auditor, referred to in Code (1957), Art. 19, Sec. 29, is an "appointed official" within the meaning and intent of Code (1957), Art. 73B.

Some courts, relying on indications that the law-making body so intended, have said that the term official has a broader meaning than has the term officer in its technical sense, but generally the two words have been regarded as synonymous. Black's Law Dictionary (4th Ed.) defines official as "an officer; a person invested with the authority of an office." 67 C. J. S. *Officers* Sec. 2b (p. 102) says that the term official has been said to mean "an officer or the incumbent of an office created by statute or valid municipal ordinance." Article 73B gives internal evidence that the legislatures which enacted it used the word official as another word for officer. Section 1 defines an employee as "any regular classified or unclassified *officer* or employee of the State for whom compensation is provided by State appropriation." (Emphasis supplied.) Section 3(1) requires that every one who becomes "an employee as herein defined" must, as a condition of employment, become a member of the retirement system. Sections 4 and 5, the statutes relied on by the appellant, refer to elected or appointed officials who would have continued to be members of the system by virtue of holding "such elective or appointed *office*." (Emphasis supplied.)

---

1. In the petition appellant relied not only on Code (1957), Art. 73B, Sec. 4, but also on the next section of Art. 73B which extended to "any former member of the Retirement System who was formerly a member by virtue of being an elected or appointed official * * * the right at his option to continue membership in the system" upon making the payments specified in Section 4.

As we see it the case turns on whether the appellant was or was not an officer during his period of service as deputy State auditor.[2]

This Court has laid down tests to aid in drawing the line between an employee and an officer, although it has said consistently that each case must be decided on its own facts, that no one of the tests is conclusive, and, from time to time, has varied the emphasis put on the respective tests. Indications as to whether a public servant is or is not an officer are found in the presence or absence of the following: is he required to take an official oath; is he issued a commission; is a bond required; is the position called an office; is the position one of dignity and importance; does the public servant exercise in his own official right some of the sovereign powers of government for the benefit of the public; does he have a fixed tenure?[3]

The two tests which would seem to have been deemed most significant are the requirement of the oath and the delegation of sovereignty. *School Com'rs v. Goldsborough*, 90 Md. 193, 207; *Truitt v. Collins*, 122 Md. 526, 531; *State Tax Commis-*

---

2. By Chapter 20 of the Laws of 1960, effective after the appellant had left the service of the State, the deputy State auditor was put under the merit system and the reference in Code (1957), Art. 19, Sec. 29, to the deputy holding "office" was eliminated. By this action the Legislature would seem to have definitely classified the deputy State auditor as an employee.

3. The importance of tenure in the mind of the Legislature is shown by the provision in Code (1957), Art. 73B, Sec. 3(5) that despite the requirement of Sec. 3(1) (that every employee and officer of the State become a member of the Retirement System) membership in the system shall be optional "with any class of elected officials, or with any class of officials appointed for fixed terms." It may well be that the Legislature in enacting Sections 4 and 5 of Art. 73B meant by the use of the phrase "appointed official" therein to designate only such officials as had fixed terms of office. Sections 4 and 5 do not, however, expressly so limit their applicability, and there are officers of the State who do not have a fixed term. An example is the Clerk of the Court of Appeals, who serves at the pleasure of the Court. The Attorney General ruled in 26 Op. A. G. 337 that the Clerk was an officer.

*sion v. Harrington,* 126 Md. 157, 159, 160; *Buchholtz v. Hill,* 178 Md. 280, 283; *Jackson v. Cosby,* 179 Md. 671, 675; *Pressman v. D'Alesandro,* 211 Md. 50, 55; *Hetrich v. County Com'rs of Anne Arundel County,* 222 Md. 304, 307.

Appellant finds support for his claim that he was an officer in (1) the fact that Code (1957), Art. 19, Sec. 29, provided that the deputy shall "hold office" at the pleasure of the State Auditor; (2) that the position is one of dignity and importance in that the occupant supervises some thirty assistant auditors and the appointment by the State Auditor requires the approval of the Governor under the statute; (3) that the statutory qualifications for the office are almost as exacting as those of the State Auditor; and (4) that the statute requires the deputy to file a substantial bond.

The force of his arguments as to the necessary qualifications of the deputy and the requirement of filing bond is weakened by the fact that the assistant auditors, who admittedly are employees and not officers, are also required to have high accounting qualifications and to file substantial bonds. The position of deputy State auditor is certainly one of dignity and importance but these intangible attributes are relative and their precise value as tests of office somewhat elusive. There is force in appellant's contention that the reference in the statute in effect while he was serving to the deputy holding "office" is helpful to his view.

While the drawing of the line in this case is not free from difficulty, we think that when the Legislature did not require an official oath of the deputy and did not invest him in his own official right with any part of the sovereign power of the State, it showed that he was to be regarded as an employee rather than an officer.

Appellant seeks to overcome these important and significant weaknesses in his claim to being an officer by saying (1) that in fact he took the oath before the State Auditor and, in any case, because his principal, the Auditor, was an officer he, the deputy, was impliedly required to take the oath even though the statute did not so specify; and (2) that during the illness, absence or incapacity of the Auditor he had the implied right

to exercise the duties of that office and in fact did so when the Auditor became ill.

We think the determinative thing is that the statute did not require the deputy to take the oath prescribed by the Constitution as it did the Auditor. It is not the taking of the oath that is decisive but rather the statutory requirement that it be taken, which offers legislative indication that the position is an office. The statutes reiterate the importance the Constitution attaches to the requirement of the oath. Code (1957), Art. 70, Sec. 7, requires each elected and appointed officer to take the oath before the clerk of the appropriate court, and Section 8 directs that he shall inscribe opposite his signature in the Test Book the title of the office to which he shall have been elected or appointed. The appellant did not do either. Section 11 of Article 70 provides that any person, whether elected or appointed to office, who shall decline or neglect to take and subscribe the prescribed oath "for the period of thirty days from the day when the commission of such officer has been received at the office of the respective clerks, or, in those cases in which no commission is sent to the clerks, within thirty days after receiving his commission or notice of his appointment, shall be deemed to have refused said office." No commission was issued to appellant as is customarily done to every officer, and he did not take and subscribe the oath before the clerk as the statute requires.

In the argument that because the Auditor is required to take the oath it is to be inferred that his deputy shall, appellant attempts to lift himself by his bootstraps, with no more success than is to be expected from such a maneuver.

We read the applicable statutes as giving the deputy no authority to act in his own official name or right and, therefore, as showing that no part of the sovereignty of the State has been delegated to him. Section 30 of Article 19 directs the State Auditor "with the aid of the deputy State auditor and the assistant State auditors" to audit the accounts of the court clerks and other State agents. The deputy State auditor and the assistants are directed to report the results of their examinations and findings to the State Auditor and to no one else, except by written authority of the State Auditor. Sec-

tion 32 authorizes the State Auditor to require the production before him of books and accounts and to examine any State officials under oath, and to compel the attendance of any witness before him. The section concludes by providing that the deputy "under the direction of the State Auditor" shall have the same powers. Nowhere else is there any mention or indication of the deputy acting in his own official right or name and in this one instance he is to act only under the direction of his superior. Section 33 provides that in the event of the Auditor's death, resignation, refusal to act or removal, the Governor shall name a successor State Auditor and makes no mention of the deputy acting.

If the statutes did not, as we think they did not, authorize the appellant to act as the official alter ego of his principal, the fact that he did so, de facto, during the latter's illness would not change the result. In legal presumption, as in fact, he was acting not for and in the place of his superior, but under his direction.

Appellant urges further that by the weight of authority where the principal is an officer (as the State Auditor concededly is) a deputy whose appointment is required by statute is held to be also an officer. Most, if not all, of the cases in other States so holding apply the general Maryland rule to this situation and turn largely on whether the deputy exercises, in his own official right, some part of the sovereignty of the State. 3 McQuillen, *Municipal Corporations* (3rd Ed. 1949), Sec. 12:33, speaking of a deputy, says: "And being authorized to act for and in place of his principal, he is, of course, a public officer. If the law does not authorize one holding a position to do so, he is not a deputy but a mere employee." 67 C. J. S. *Officers* Sec. 148(b) says: "* * * where provision is made by statute for the position of deputy, such deputy is regarded as a public officer, and it has been held that, if the superior is denominated an 'officer,' then the deputy is also an 'officer,' but, where a statute confers a power only to be exercised for, and in the name of, the principal, a deputy is not an officer * * *."

The contrary concepts are exemplified by two cases of deputy state auditors. In *Wells v. State* (Ind.), 94 N. E.

321, 323, the Court held the deputy to be an officer because, under the applicable statutes, he must take the oath required of the auditor, and "perform all the official duties of the principal, and be subject to the same regulations and penalties * * *." In *Guess v. Miller,* (Miss.), 88 So. 881, 882, the opposite result was reached. The Court said: "The statutes providing for the appointment of the two deputies here in question confer no power on them to be exercised independently of their principals, but power to be exercised only for and in the name of their principals" and the deputies were not officers because there was no delegation to them of sovereignty requisite to the existence of an office.

See also, for illustration, *Dosker v. Andrus* (Mich.), 70 N. W. 2d 765, 767, which decided that a deputy register of deeds held a public office and was an official within the meaning of the State pension and retirement acts because of the statutory direction that he should act as register during the continuance of the absence or disability of his principal, and because he was required to take the constitutional oath. The Court said: "The deputy register of deeds is in the position of acting at times designated as the alter ego of the register of deeds." See also *Heath v. Creagh,* 96 N. Y. S. 2d 247, for citation and discussion of New York cases holding that a deputy is not an officer unless in his own legal right he acts directly for the State, and not for his principal.[4]

---

4. The Attorney General of Maryland ruled in 13 Op. A. G. 209 that a deputy clerk was an officer because he held a position created by the Constitution of Maryland, was required to take the oath of office and, under *Smith v. Turner,* 101 Md. 584, 591, in effect exercised the powers of the clerk in his own right. In 15 Op. A. G. 235 and 16 Op. A. G. 268, it was ruled that because a deputy Register of Wills was authorized specifically by statute to act in the place and stead of the Register of Wills, an officer, that the deputy was an officer. In 21 Op. A. G. 539, a deputy game warden, who by statute was given full police powers, was held to be an officer on the strength of both *Harris v. Mayor & C. C. of Baltimore,* 151 Md. 11 (which held that a park policeman was a "public officer") and the applicable statute which provided that before entering upon the duties of his office, every game warden and deputy game warden was required to take the oath prescribed by the sixth

The provisions of Sections 29 to 34 of Article 19 make plain the distinction between the position of the deputy State auditor and those deputies to whom is confided some part of the sovereignty of the State. Under the statutes controlling this case, the appellant seems to have been more of a first among equals in the ranks of the assistants than a legal alter ego of the State Auditor.

The words of this Court in *Jackson v. Cosby, supra,* at page 675 of 179 Md. seem apposite here: "A person who receives no commission, takes no oath of office, has no term of office fixed by statute or ordinance, and exercises no portion of the sovereign power of the government, but merely performs the duties required of him by the officials employing him, is not a public officer within the meaning of the Constitution."

*Order affirmed, with costs.*

---

section of the first Article of the Constitution. Code (1957), Art. 87 (Sheriffs), Sec. 54, provides that every deputy sheriff in Washington County "shall be deemed an appointed official within the meaning of Section 11 of Article 73B, and any amendments thereto, and shall be treated as such for all purposes of said Article 73B."