DUNCAN, Infant, etc. ET AL. *v.* KOUSTENIS

[No. 138, September Term, 1970.]

*Decided December 11, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Howard E. Goldman,* with whom were *Melbourne & Goldman* on the brief, for appellants.

*James P. Salmon,* with whom were *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The principal question presented to us in this appeal is whether the defense of governmental immunity is available as a complete defense to the appellee, Demitrios Koustenis, defendant below, a teacher employed by the Prince George's County Board of Education (Koustenis or teacher), to a tort action instituted by the infant appellant, Louis P. Duncan, Jr., and others against the teacher to recover damages allegedly proximately caused by the teacher's negligence.

The tort action was filed on September 19, 1969, in the Circuit Court for Prince George's County by the infant plaintiff by his father and next friend, Louis P. Duncan, Sr. and individually, against the Board of County Commissioners of Prince George's County (County Board) and the Board of Education of Prince George's County (School Board) as well as against the teacher. The declaration alleged substantially as follows:

In the first count, that the infant plaintiff on June 2, 1969, was a junior high school student lawfully attending an industrial arts class in the G. Gardner Shugart, Jr. High School in Hillcrest Heights, Prince George's County, taught by the defendant Koustenis who had the duty to inspect, adjust or repair the power tools in his classroom, provided for student use, in a safe and proper condition. One of such tools was an automatic planer. Due to the negligence of Koustenis, the guard on the automatic planer was improperly secured making it impossible to provide its intended protection. While the infant plaintiff on June 2, 1969, was operating the automatic planer with due care, because of the teacher's negligence in not inspecting, adjusting or repairing the automatic planer, the guard failed to keep the fingers of the infant plaintiff from coming in contact with the exposed moving cutting edge—thereby severing parts of two fingers on his left hand which caused excruciating pain and suffering and permanent injuries. The damages claimed were $250,-000.00.

Count Two set forth the claim for the father of the infant plaintiff. It incorporated the allegations of Count One and alleged that as a direct and proximate result of the negligence of the defendants and the resulting injuries to his infant son, the father had been compelled to pay large sums of money for hospitalization, medicines and other medical expenses, and lost his infant son's services. The damages claimed in Count Two were $50,000.-00, against the defendants, jointly and severally.

Count Three incorporated all of the allegations of Count One and sued all of the defendants because the teacher was a duly authorized agent, servant and employee of the County Board and of the School Board, acting within the scope of his employment, whereby the infant plaintiff by his father and next friend claimed $1,-000.00 damages. A jury trial was elected.

The County Board and the School Board each demurred to the declaration and both demurrers were sustained without leave to amend, the latter with the consent of the plaintiffs. The teacher on October 21, 1969, filed a motion relying on a preliminary objection raising the defense of total governmental immunity and alleged that "while exercising the functions of the Board of Education of Prince George's County, which is immune from such a suit, the defendant is also immune." The teacher asked that judgment be entered in his favor against the plaintiffs.

After the submission of legal memoranda and the hearing of arguments by the respective parties, the Circuit Court for Prince George's County (Robert B. Mathias, J.) granted the teacher's motion and ordered on January 29, 1970, that a judgment for costs be entered in favor of the defendant Koustenis. A timely appeal was taken to this Court from that judgment.

Although considered by a number of our sister states, the interesting question of whether the defense of governmental immunity is available to a teacher in the public schools is one of first impression in this State.

The doctrine of governmental immunity originated in

England on the theory that the king could do no wrong, that he was supreme and could not be subject to another earthly power. In spite of the incongruence of this theory with our republican form of government, the doctrine was adopted in this country. *Godwin v. County Commissioners of St. Mary's County,* 256 Md. 326, 260 A. 2d 295 (1970). This adoption has been called " 'one of the mysteries of legal evolution.' " *Muskopf v. Corning Hospital District,* 55 Cal. 2d 211, 214, 215, 359 P. 2d 457, 459 (1961).

The theory of sovereignty remains the basis of school board immunity although additional reasons have been put forth to explain it in terms of our system of government, namely, that funds appropriated to the board are held in trust for school purposes and cannot be expended in payment of tort claims. See, for example, *Weddle v. Board of County School Commissioners,* 94 Md. 334, 344, 51 Atl. 289, 291 (1902), in which Judge Briscoe stated for the Court:

> "There is no power given the Boards of School Commissioners to raise money for the purpose of paying damages nor are they supplied with means to pay a judgment against them. All of their funds are appropriated by Law to specific purposes and they cannot be diverted by them."

A reading of the whole opinion, however, indicates to us that this statement by the Court is intended to be considered in connection with the question of whether or not the Legislature by either express provision or by implication had *waived the sovereign immunity* otherwise enjoyed by the Board of School Commissioners, although the sovereign immunity of the Board is not expressly mentioned in the opinion, but is rather the assumed basis on which the opinion is predicated. This becomes clearer when the prior Maryland cases relied on by the Court— *Mayor and City Council of Baltimore v. Pendleton,* 15 Md. 12 (1860) ; *Mayor and City Council of Baltimore v. Marriott,* 9 Md. 160 (1856), and *County Commissioners*

*v. Duckett,* 20 Md. 468 (1864), all involving statutes waiving possible governmental immunity — are considered.

In the later case of *Gold v. Mayor & City Council of Baltimore,* 137 Md. 335, 112 Atl. 588, 14 A.L.R. 1389 (1921), in the opinion also written for the Court by Judge Briscoe and citing the *Weddle* case with approval and following it, the rationale of *Weddle* becomes clear. In *Gold* it was stated:

> "The immunity or exemption from liability in such cases rests upon the theory that the municipality is in the performance of a public or governmental duty and is the instrumentality of the State, exercising a governmental function. In the absence of statute, expressly or by necessary implication giving the right of action, the municipality is not liable." (137 Md. at 340, 112 Atl. at 589)

See also the decision of our predecessors in *Clauss v. Board of Education,* 181 Md. 513, 524, 30 A. 2d 779, 784 (1943). In *Clauss,* the *Weddle* case was distinguished from the *Clauss* case in which the Court held that the Board of Education of Anne Arundel County was subject to the Workmen's Compensation Law, on the ground that:

> "While the Legislature has not provided any funds for paying damages recovered in negligence actions by pupils, [the *Weddle* case] it has provided by necessary implication, contained in Section 46 of Article 101, funds to take care of compensation of employees who come within the provisions of the Workmen's Compensation Act."

In any event, it seems apparent that once the immunity of the School Board is established, the depletion of the public treasury rationale would have no relevance to the question of whether its immunity extends to public school teachers — an independent question — inasmuch as the Doctrine of Respondeat Superior could not be used to

pierce the School Board's immunity and thus deplete its public funds.

In light of the contemporary views of risk distribution in the area of tort law and the availability of liability insurance, the doctrine of governmental immunity has fallen into great disfavor. 1959 Duke Law Journal 588, 590. Many states have curtailed the doctrine in relation to school boards by legislative action. Cal. Government Code, § 810 replacing repealed § 903 of Cal. Ed. Code; 1958 Conn. Gen. Stat. § 10-235; Minn. Stat. Ann. § 127.03; N. J. Stat. Ann. § 18:5—50.4; N. Y. Ed. Law § 2560; Art. 31 N. C. Gen. Stat. § 143-291 (1969 Cum. Supp.). At least one state has done so by judicial decision. *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill. 2d 11, 163 N.E.2d 89 (1959). Because the doctrine is so deeply ingrained in the law of Maryland, this Court has specifically declined to alter it without a legislative mandate. *Weisner v. Board of Education of Montgomery County,* 237 Md. 391, 395, 206 A. 2d 560 (1965). Thus, conceding the existence of governmental immunity of the school board, the only question at issue in the present case is whether that immunity extends to the individual public school teacher.

The rule in some states is not to extend immunity to government employees when acting negligently on the theory that negligent acts fall outside of their governmental authority. *Carr v. Wright,* 423 S.W.2d 521 (1968); *Crabbe v. County School Bd. of Northumberland Co.,* 209 Va. 356, 164 S.E.2d 639 (1968); *Brooks v. Jacobs,* 139 Maine 371, 31 A. 2d 414 (1943). In other states immunity is extended in cases of non-feasance but not malfeasance. *Fulgoni v. Johnston,* 302 Mass. 421, 19 N.E.2d 542 (1939). In Maryland governmental immunity is extended to all nonmalicious acts of *public officials* as opposed to *public employees* when acting in a discretionary as opposed to ministerial capacity. *Clark v. Ferling,* 220 Md. 109, 151 A. 2d 137 (1959); *Cocking v. Wade,* 87 Md. 529, 40 Atl. 104 (1898).

Since Koustenis was acting in a discretionary capacity

and there has been no allegation of malice on his part, the sole issue to be resolved is whether or not he, a public school teacher, is a public official of the state.

There are many Maryland cases dealing with the delineation of the public official concept and the following tests have been set forth: "[I]s he required to take an official oath; is he issued a commission; is a bond required; is the position called an office; is the position one of dignity and importance; does the public servant exercise in his own right some of the sovereign powers of government for the benefit of the public; does he have a fixed tenure?" *Gary v. Board of Trustees,* 223 Md. 446, 449, 165 A. 2d 475 (1960).

The dignity of the office test was greatly depreciated if not abandoned in *Carder v. Steiner,* 225 Md. 271, 170 A. 2d 220 (1961) when this Court stated that "Immunity from liability rests not on the dignity of the office but rather on the nature of the function exercised."

In applying the above tests, it seems clear that a public school teacher would not qualify as a public official. A teacher is not required to take an official oath; he receives no commission; gives no bond; is not commonly thought of as an officer or occupant of an office; does not exercise sovereign powers of government in his own right although a teacher is given tenure through Art. 77 § 115 of the Ann. Code of Md. (1969 Repl. Vol.). In *Baltimore City v. Lyman,* 92 Md. 591, 48 Atl. 145 (1901), this Court held that the Superintendent of Public Instruction in Baltimore City, who also failed to meet the above tests, was not a public official. On the question of the exercise of sovereign powers, the Court stated, "It also appears from an examination of the charter, that all executive power, relating to educational matters is vested in a department known as 'the Department of Education' and this department is composed of the Board of School Commissioners. The Superintendent of Public Instruction exercises no powers except what is derived from and through this Board. He is simply an employee or the agent of the School Board and not a municipal official,

within the meaning of the charter." Similarly we hold that a public school teacher is a professional contract employee of the State and is not a public official of the State.

As indicated in *Gary v. Board of Trustees, supra,* the above tests are not conclusive; and the emphasis on each may vary in different cases. The exceptions where an individual fails to meet most of the above tests, and yet is nevertheless considered to be a public official, are limited to those individuals who exercise "a *large portion* of the sovereign power of government" (Emphasis added) as do County Commissioners with respect to water, sewerage and drainage, *Howard County Metropolitan Commission v. Westphal,* 232 Md. 334, 340, 193 A. 2d 56, 59 (1963), and to those individuals who can be called on to exercise police powers as conservators of the peace. See *Harris v. Mayor & City Council of Baltimore,* 151 Md. 11, 133 Atl. 888 (1926) where a park policeman was held to be a public official and *Carder v. Steiner,* 225 Md. 271, 170 A. 2d 220 (1961) where a prison guard was likewise held to be a public official. The same observation was made in 21 Op. A. G. 539 (1936) where a deputy game warden was considered a public official in the opinion of the Attorney General. A teacher would not come within the first exception because he does not serve in a legislative or policymaking capacity requiring the exercise of a large portion of State sovereignty as does a County Commissioner. A teacher does not make rules and regulations or determine county educational policy. Neither would he come within the second exception as any authority a teacher might be considered to exercise in his own right would not be in the nature of police power. This difference in function is suggested from language in *Cocking v. Wade,* 87 Md. 529, 540, 40 Atl. 104, 106 (1898) wherein a sheriff was held to be a public official and therefore immune and then reiterated in *Clark v. Ferling,* 220 Md. 109, 114, 151 A. 2d 137, 140 (1959) wherein the Superintendent of the Maryland State Reformatory for Males was held to be a public official and immune. The *Cocking* language repeated in *Clark* referring to the sher-

iff's function was that, ". . .his duty to keep the prisoner was not for the benefit of the prisoner, it was that he might be detained until discharged in due course of law." This statement illustrates a subtle distinction between authority in the nature of police power and the authority used by a teacher. The former is exercised in opposition to those subject to it for the public good whereas the latter is exercised as a service to benefit those immediately subject to it while also directed to the ultimate public welfare.

Holding a public school teacher not to be a public official is in accordance with analogous Maryland cases wherein the following government employees have been held not to be public officials, *e.g.*, *Howard County Metropolitan Commission v. Westphal*, 232 Md. 334, 193 A. 2d 56 (1963) (Chief of Right-of-Way Department of the State Roads Commission and Chief of Alcoholic Beverages Division) ; *Gary v. Board of Trustees*, 223 Md. 446, 165 A. 2d 475 (1960) (Deputy State Auditor) ; *Hammond v. Lancaster*, 194 Md. 462, 71 A. 2d 474 (1950) (Special Assistant Attorney General) ; *State Tax Commission v. Harrington*, 126 Md. 157, 94 Atl. 537 (1915) (General Counsel of State Tax Commission) ; *Clark v. Harford Agricultural and Breeders' Association*, 118 Md. 608, 85 Atl. 503 (1912) (Members of Racing Commission) ; *Baltimore City v. Lyman*, 92 Md. 591, 48 Atl. 145 (1901) (Superintendent of Public Instruction).

In the overwhelming majority of other jurisdictions where the specific question has been decided, teachers have been held not to be public officials. See *Eastman v. Williams*, 124 Vt. 445, 207 A. 2d 146 (1965) ; *Lander v. Seaver*, 32 Vt. 114 (1859) ; *Francis v. Iowa Employment Security Commission*, 250 Iowa 1300, 98 N.W.2d 733 (1959) ; *Main v. Claremont Unified School District*, 161 Cal.App.2d 189, 326 P. 2d 573 (1958) ; *Leymel v. Johnson*, 105 Cal. App. 694, 288 Pac. 858 (1930) ; 75 A.L.R. 1352. It was stated in *Leymel, supra*, at 860, 861 that:

> "No matter how highly we regard the profession
> of teaching, we cannot conclude that the teacher

is exercising some of the sovereign powers of the state in performing the arduous duties of his profession. He must be paternal . . . the moralist . . . a disciplinarian . . . an educator. In doing these things he can accomplish them as the man and the citizen, and for success in his endeavors he does not need to be clothed with any of the sovereign functions of the state."

\* \* \*

"The art of teaching came into being with the human race and preceded the existence of the state."

The State has merely employed the services of teachers; it has not created them by constitutional or legislative enactment and grant of power. It would not be contended that teachers in the private sector are public officials yet these teachers are virtually indistinguishable from public school teachers in terms of function and authority and apparently suffer no great impairment in the performance of their duties from lack of a grant of governmental power.

Having concluded that a teacher is not a public official and consequently that governmental immunity does not extend to Koustenis, there is no need to explore the question raised in regard to the effect of an otherwise immune defendant carrying liability insurance.

When the lower court sustained the preliminary objection of the defendant, the appellee Koustenis, on the grounds of governmental immunity, it committed reversible error. The judgment of January 29, 1970, in favor of the defendant Koustenis for costs will be reversed and the case remanded to enable the defendant Koustenis to plead to the declaration and the parties to proceed in due course to a trial on the merits.

*Judgment reversed, and the case remanded for further proceedings in accordance with this opinion, the costs to be paid by the appellee.*