Dennis A. **BAGE**, Administrator of the Estates of William D. Bage and Gary Bage, deceased, et al.

v.

Alexander **HERNANDEZ** et al.

Civ. No. 70–745.

United States District Court, D. Maryland.

March 9, 1972.

Francis X. Quinn, Rockville, Md., and Henry B. FitzPatrick, Jr., Philadelphia, Pa., for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland, and Edward R. Jeunette, Special Asst. Atty. Gen., for defendants.

David L. Bowers, Baltimore, Md., for defendant Hernandez.

FRANK A. KAUFMAN, District Judge.

■ Plaintiffs allege that on June 24, 1968, one William Wilson was admitted to the defendant Spring Grove State Hospital (hospital), where he came under the care of the defendant doctors Radauskas and Hernandez;[1] that Wilson was then suffering from a mental illness; that on August 2, 1968, Wilson was permitted by the defendants to leave the hospital although Wilson was at that time still suffering from a mental illness and was under medication; that on August 4, 1968, Wilson, while operating an automobile upon a public highway, caused a collision between that automobile and one being driven by William D. Bage, which resulted in the deaths of William D. Bage and Gary Bage, his son, and in injuries to Michael Bage and Mary Bage, another son and the wife, respectively, of William D. Bage, all of whom were occupants of the Bage vehicle; that the defendants were negligent, *inter alia*, in permitting Wilson to leave the hospital, in not restraining his subsequent operation of automobiles and generally in failing to exercise proper skill, diligence and care under the circumstances; and that the deaths or injuries of the above-mentioned members of the Bage family were a direct result of the defendants' alleged negligence. In this case, surviving members of the Bage family, suing either as individuals or in various representative capacities,[2] seek damages on account of

---

1. It is undisputed that Dr. Radauskas was Superintendent of the hospital during the period Wilson was a patient therein, and that Dr. Hernandez was a staff psychiatrist during that period in that hospital.

2. First, Dennis A. Bage, suing as administrator of the estate of William D. Bage, seeks damages for the latter's conscious pain and suffering, and medical and other expenses, prior to his death, and for his funeral expenses. Second, Mary Bage, suing for herself and for the use and benefit of Dennis A. Bage, Michael Bage, William D. Bage, Jr., and Norman D. Bage, all sons of William D. Bage, seeks damages for the wrongful death of William D. Bage. Third, Dennis A. Bage, suing as administrator of the estate of Gary Bage, seeks damages for the latter's conscious pain and suffering, and medical and other expenses, prior to his death, and for his funeral expenses. Fourth, Mary Bage, suing for herself and for the use and benefit of Dennis A. Bage and Michael Bage, seeks damages for the wrongful death of Gary Bage. Fifth Mary Bage, suing for herself and as next friend and mother of Michael Bage, seeks damages for personal injuries to the latter. Sixth, Mary Bage seeks damages for personal injuries which she sustained.

those deaths and injuries. Diversity jurisdiction exists herein.[3] The hospital and both defendant doctors have filed motions to dismiss under Federal Civil Rule 12(b).

■ The hospital is an agency of the State of Maryland.[4] As such, it enjoys governmental immunity from this suit, since the alleged negligence occurred during the hospital's performance of a public or governmental duty and while the hospital was exercising a governmental function. Robinson v. Board of County Commissioners, 262 Md. 342, 344–345, 278 A.2d 71 (1971); Duncan v. Koustenis, 260 Md. 98, 101–104, 271 A. 2d 547 (1970); Gold v. Mayor & City Council of Baltimore, 137 Md. 335, 340, 112 A. 588 (1921). Likewise, the individual defendants, to the extent that they are sued in their capacity, if any, as agents of the State of Maryland, are in the position of the State and enjoy governmental immunity herein.[5] Whether and to what degree they are subject to this suit in their individual capacities pose more difficult questions.

"In Maryland governmental immunity is extended to all nonmalicious acts of *public officials* as opposed to *public employees* when acting in a discretionary as opposed to ministerial capacity." Duncan v. Koustenis, *supra*, 260 Md. at 104, 271 A.2d at 550. The record contains no allegation of malice.[6] Moreover, it is undisputed in this case that the individual defendant doctors were acting in a discretionary capacity. *Cf.* Duncan v. Koustenis, *supra*, 260 Md. at 104, 271 A.2d. 547; State, use of Clark v. Ferling, 220 Md. 109, 113–114, 151 A. 2d 137 (1959). Thus, the key issue is whether the doctors were public officials or public employees.

In Duncan v. Koustenis, *supra*, 260 Md. at 105, 271 A.2d at 550 Judge Barnes, seeking tests for determining whether a person is a public official, quoted as follows from Gary v. Board of Trustees, 223 Md. 446, 449, 165 A.2d 475 (1960):

[I]s [the person in question] required to take an official oath; is he issued a commission; is a bond required; is

3. Plaintiffs Dennis A. Bage and Mary Bage are citizens of the Commonwealth of Pennsylvania, as is Michael Bage, the minor son of Mary Bage. Originally, William Bage, Jr. and Norman D. Bage were also named as plaintiffs herein. Norman D. Bage died shortly after the institution of this suit. Subsequently, after all counsel in this case informed this Court that William Bage, Jr. and Norman D. Bage were, at the time of their father's death, over 21 years of age and that counsel did not believe that either William Bage, Jr. or the estate of Norman D. Bage had any financial interest in this case, and after William Bage, Jr. and Norman D. Bage's representative failed, in response to an Order of this Court, to show cause why the motion of the remaining plaintiffs to drop them as parties plaintiff should not be granted, this Court ordered that they be so dropped. Their initial inclusion as parties plaintiff and subsequent dropping does not destroy or adversely affect jurisdiction of this Court in this case. Kelly v. Eclipse, 305 F.Supp. 191, 192 n. 2 (D.Md.1969), aff'd, 432 F.2d 1009 (4th Cir. 1970).

Defendants Alexander Hernandez and Bruno Radauskas are citizens of the State of Maryland. Defendant Spring Grove State Hospital, an agency of the State of Maryland, is located in the State of Maryland. The amount in controversy, exclusive of interest and costs, exceeds $10,000.00.

4. Md.Ann.Code art. 59, § 31 (1971 Cum. Supp) specifically places Spring Grove State Hospital "under the general jurisdiction of the Commissioner" of Mental Hygiene and describes the hospital as a public facility. *See* Md.Ann.Code art. 59, § 19 prior to its repeal, effective July 1, 1970, by Ch. 407, Acts 1970.

5. During a conference with this Court, plaintiffs' counsel agreed that the defense of immunity by all defendants was to be considered as being before this Court at this time, regardless of any pleading defect and regardless of whether that defense should or should not be raised by a Federal Civil Rule 12(b) motion.

6. Counsel for plaintiffs have stated that they are not contending at this time that either of the doctors acted maliciously; however, counsel for plaintiffs have asked and been granted the opportunity timely to amend the complaint to include allegations of malice should further discovery reveal facts to support such allegations.

the position called an office; is the position one of dignity and importance; does the public servant exercise in his own [sic] right some of the sovereign powers of government for the benefit of the public; does he have a fixed tenure?

█ Neither Dr. Radauskas nor Dr. Hernandez was required to take an official oath. Nor was either issued a commission or required to post a bond. Neither occupied what is considered to be an "office"; and neither enjoyed "fixed tenure." In *Duncan, supra*, 260 Md. at 105, 271 A.2d at 550, Judge Barnes, commenting on "[t]he dignity of the office test," wrote that that "test was greatly depreciated if not abandoned in Carder v. Steiner, 225 Md. 271, 170 A.2d 220 (1961)", since the Court stated there that "[i]mmunity from liability rests not on the dignity of the office but rather on the nature of the function exercised."

A look at the statutes relating to Spring Grove Hospital is of aid in connection with determining the duties of the two defendant doctors. Md.Ann. Code art. 59, §§ 18 and 19 (1968 Repl. Vol.) were in effect at all times material herein.[7]  Section 18 provided, in part:

> The Department of Mental Hygiene is hereby vested with full and plenary powers and charged with the duties and functions of supervision of all matters relating to the custody, cure and treatment of the insane * * *.

Section 19 provided, in part:

> Spring Grove State Hospital [and other institutions] shall hereafter exercise their functions under the supervision, direction and control of the Department of Mental Hygiene. Upon every occurrence of a vacancy in the position of superintendent of any

of said institutions, the Commissioner of Mental Hygiene, shall appoint the successor. . . . Each of said superintendents . . . shall be responsible to the Commissioner of Mental Hygiene for the operation of the institution in his charge, and shall submit to the Department such reports, including medical and financial, as the Department of Mental Hygiene may request. It shall be the duty of each superintendent to inform the Department of Mental Hygiene of the conditions in his institution, and to order that such changes as seem desirable for the welfare of the patients be put into effect, with the approval of the Department of Mental Hygiene.

In Board of County School Commissioners of Worcester Co. v. Goldsborough, 90 Md. 193, 207, 44 A. 1055, 1058 (1899), the Court of Appeals, in distinguishing civil officers from civil servants, stated:

> Civil officers, therefore, are governmental agents. They are natural persons in whom a part of the state's sovereignty is vested or reposed, to be exercised by the individuals so entrusted with it for the public good. *The power to act for the state is confided to the person appointed to act.* It belongs to him upon assuming the office. He is clothed with the authority which he exerts, and *the official acts done by him are done as his acts and not as the acts of a body corporate.* [Emphasis supplied.]

It is readily apparent, from a juxtaposition of the characteristics of Dr. Radauskas' position (as defined by section 19, *supra*) with the description of the role of one exercising some of the sovereign powers of government (as set forth in *Goldsborough*), that the two are mutually exclusive. Dr. Radauskas was not entrusted with the power to act for the

7. Since repealed by Ch. 407, Acts 1970. The analogous provisions of the Maryland Code are now found in other sections of article 59; *see*, in particular, §§ 2, 30 and 31.

State, in the sense that any part of the State's sovereignty was vested in him. He did not act as a natural person who was entitled to speak or act as the State itself. Rather, the power to act for the State was and is vested at no lower position on the administrative ladder than the level of the Commissioner of the Department of Mental Hygiene, to whom Dr. Radauskas was by section 19 made responsible. Dr. Radauskas position is analagous to that of the Superintendent of Public Instruction of Baltimore City in Mayor and City Council of Baltimore v. Lyman, 92 Md. 591, 48 A. 145 (1901), a case which did not itself involve immunity, in which the Court stated (at 612, 48 A. at 146, after citing *Goldsborough*):

> It . . . appears from an examination of the charter, that all the executive power, relating to educational matters is vested in a department known as "the Department of Education" and this department is composed of the board of school commissioners. The superintendent of public instruction exercises no power except what is derived from and through this board. He is simply, then, an employee or the agent of the school board and not a municipal official, within the meaning of the charter.

As for Dr. Hernandez, a staff psychiatrist, whose position was included within the merit system by article 59, section 19, it is obvious that he was further removed from the power to "exercise sovereign powers of government in his own right," Duncan v. Koustenis, *supra*, 260 Md. at 105, 271 A.2d at 550, than was his superior, Dr. Radauskas. In sum, neither Dr. Radauskas nor Dr. Hernandez meets any of the tests for a public official which were enunciated in Gary v. Board of Trustees, *supra*.

However, after listing those tests in its opinion in *Duncan, supra*, the Court of Appeals recognized that persons who do not meet those tests may still be considered to be public officials, or the same as public officials for purposes of determining immunity from suit, if they either exercise "a *large portion* of the sovereign power of government" or can be called upon to exercise "police powers as conservators of the peace." (260 Md. at 106, 271 A.2d at 551.) It has already been determined that neither doctor exercised any of the State's sovereignty. Therefore, the former category is inapplicable in this case. Thus, the issue of whether they are to be treated as public officials must be resolved by determining whether they fit within the latter category. In *Duncan*, the controversy also narrowed to that issue, and Judge Barnes noted therein (at 106, 271 A.2d at 551) that persons such as a prison guard, Carder v. Steiner, 225 Md. 271, 170 A.2d 220 (1961), a reformatory superintendent, Clark v. Ferling, 220 Md. 109, 151 A.2d 137 (1959), a park policeman, Harris v. Mayor & City Council of Baltimore, 151 Md. 11, 133 A. 888 (1926), and a sheriff, Cocking v. Wade, 87 Md. 529, 40 A. 104 (1898), have been classified as persons who exercise "police powers as conservators of the peace" and, for that reason, seemingly have been treated as public officials. Analyzing those decisions, Judge Barnes held that persons such as prison guards and sheriffs performed functions which were different than those performed by the teacher who was involved in *Duncan* and who was classified therein as a public employee subject to liability for negligence even in the absence of malice. Judge Barnes (260 Md. at 107, 271 A.2d at 551) called attention to—

> . . . a subtle distinction between authority in the nature of police power and the authority used by a teacher. The former is exercised in opposition to those subject to it for the public good whereas the latter is exercised as a service to benefit those immediately subject to it while also directed to the ultimate public welfare.

In a recent opinion of the Court of Appeals of Maryland, Judge McWilliams, in June, 1971, in Robinson v. Board of

County Commissioners, *supra*, reviewed *Duncan* and the pre-*Duncan* case law including *Carder, Clark, Harris* and *Cocking*, and concluded, in the course of following those cases, that "policemen are 'public officials'" for purposes of application of the immunity doctrine discussed in those cases. *Robinson*, 262 Md. *supra* at 347, 278 A.2d 71.

The nature of the positions occupied and of the functions performed by the two defendant doctors is more similar to those of the public school teacher who was held not immune in *Duncan* than to those of a policeman, or a sheriff, or even a prison guard or a reformatory superintendent who have respectively been held immune. While one or both of the doctors can, in some ways, be termed "custodial officials," on the whole, doctors, even in a state institution for the mentally ill, which houses persons confined under court orders, have duties more similar to those of teachers than of prison guards or reformatory superintendents. The doctors, like the teacher in *Duncan*, appear to possess authority which is primarily exercised for the benefit of the inmates of Spring Grove, and only secondarily "directed to the ultimate public welfare." (260 Md. at 107, 271 A.2d at 551). Support for that conclusion is found in the ameliorative purposes spelled out in several sections of article 59 both before and after the legislative changes in 1970.[8] Those sections provide for numerous duties to be performed and procedures to be followed by the Department in assuring that inmates are given the necessary treatment and care.

For the reasons set forth herein, the motion to dismiss of the defendant Spring Grove State Hospital is hereby granted, and the motions to dismiss of the two defendant doctors are hereby denied. It is so ordered.

---

8. See n. 4 and n. 7, *supra*.