873 A.2d 366

Isabel DE LA PUENTE, et al.

v.

COUNTY COMMISSIONERS OF FREDERICK COUNTY, et al.

No. 50, Sept. Term, 2004.

Court of Appeals of Maryland.

May 5, 2005.

Michael W. Ryan (Law Office of Michael W. Ryan, Jr., Crofton, on brief), for appellants.

Michael T. McAuliffe (John M. Quinn, Ethridge, Quinn, McAuliffe, Rowan & Hartinger, Rockville, on brief), for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

HARRELL, J.

This litigation began with the filing of a complaint in the Circuit Court for Frederick County by Isabel de la Puente and Mark Willoughby (collectively "Appellants") pertaining to a sledding accident on Frederick County parkland in which their minor child, Amelia Willoughby, was injured. The third amended complaint, seeking compensatory damages only, alleged simple negligence on the parts of at least seven individuals employed in various capacities by the Frederick County Department of Parks and Recreation. The defendants included: Paul Dial, Director of Parks; "Bob" Failor, Capital Improvement Administrator; Deborah Spalding, Recreation Superintendent; Earl Eyler, Park Superintendent; and James Gist, Safety Inspector (collectively referred to here as "Appellees").[1] Appellees moved to dismiss, or for summary judgment. One of the grounds argued in support of the motion was public official immunity. At the conclusion of a hearing on 17 March 2004, the Circuit Court effectively granted summary judgment in favor of Appellees on that ground,[2] which

---

1. Additional defendants were named, but they were dismissed by consent prior to the ruling on the motion affecting Appellees. The dismissal of the other defendants is not challenged in the present appeal.

2. The trial judge stated, "I have listened carefully to the arguments of both counsel and I have reviewed the documents, the motions as well as the memoranda." The record also reflects that a supporting affidavit was filed by Appellees with their motion, that its contents were raised in argument by counsel at the motions hearing, and that those contents were relied on by the trial judge in ruling. Therefore, although the trial judge said "... and therefore I will grant the motion to dismiss," her action was in fact the grant of a motion for summary judgment. When a trial judge considers matters presented outside the four corners of the complaint, a motion to dismiss is converted to a motion for summary judgment, pursuant to Md. Rule 2–322(b, c), 2–501. *See Converge Servs.*

judgment was entered the following day. Appellant noted a timely appeal to the Court of Special Appeals.[3] Before the intermediate appellate court could consider the appeal, however, this Court, on its initiative, issued a writ of certiorari to consider whether Appellees are "public officials" entitled to assert the defense of qualified public official immunity.[4]

We shall reverse the judgment of the Circuit Court and remand the case to the Circuit Court for further proceedings not inconsistent with this opinion.

## I.

There being no argument tendered here that a genuine dispute of material fact was generated in the Circuit Court on the question of public official immunity, we recite the facts as alleged by Appellants, as the non-moving parties below, giving them the benefit of any reasonable inferences. On 16 January 1999, Amelia was sledding with her father at Pinecliff Park in Frederick, Maryland. The sledding/toboggan run ("Slope") at

---

*Group, LLC v. Curran,* 383 Md. 462, 475–76, 860 A.2d 871, 879 (2004). *See also Dual Inc., v. Lockheed Martin Corp.,* 383 Md. 151, 161, 857 A.2d 1095, 1100 (2004).

3. Final judgment ostensibly was entered by the trial court on Thursday, 18 March 2004. Appellants noted an appeal on Friday, 19 March 2004. On 29 March 2004, however, within 10 days of entry of the trial court's judgment (*see* Md. Rule 1–203(a) for computation of time in such a circumstance), Appellants filed a motion for reconsideration pursuant to Md. Rule 2–534 and a motion for a new trial pursuant to Md. Rule 2–533; both were denied on 11 May 2004. Md. Rule 8–202(c) extends the time for filing an appeal to 30 days after entry of the order disposing of the post-judgment motion. A second, "protective" notice of appeal was filed on 18 May 2004.

4. When we assume jurisdiction over an appeal pending, but undecided, before the Court of Special Appeals, we "consider those issues that would have been cognizable by the Court of Special Appeals." Md. Rule 8–131(b)(2). We most frequently do so based on the appellants' brief filed in the Court of Special Appeals. Thus, we rely on appellants' question or questions as framed in their brief before the intermediate appellate court to frame the issue or issues we consider. *See Converge Servs. Group, LLC v. Curran,* 383 Md. 462, 467, 860 A.2d 871, 874 (2004). *See also Dual Inc., v. Lockheed Martin Corp.,* 383 Md. 151, 161, 857 A.2d 1095, 1100 (2004). That is the case in this instance.

Pinecliff Park, including the land and improvements, is owned by Frederick County, Maryland, and maintained by the Frederick County Department of Parks and Recreation for public recreational use. Amelia's toboggan veered off the Slope and collided with a tree, resulting in significant physical injuries to her. She was flown by helicopter to the Shock Trauma Unit at the University of Maryland School of Medicine where she underwent two major operations, followed by months of physical therapy and rehabilitation. She continues to have permanent physical disabilities as a result of the accident.

In their complaint, Appellants alleged, in separate counts as to each Appellee, respectively, that he or she was negligent in maintaining an inherently dangerous facility, failing to prevent use of the slope, failing to warn the public that the slope was inherently dangerous due to icy conditions, failing to hire competent people to maintain the slope, and failing to assure that the slope was safe for public use, all of which were alleged to be the proximate cause of Amelia's injuries. As noted earlier, the Circuit Court granted summary judgment in favor of Appellees on the sole ground of public official immunity.[5] Appellants contended that Appellees were mere government employees and, therefore, not entitled to assert this defense. The trial judge, however, stated that "... the Court does find that the [Appellees] ... by their conduct the [Appellants] are alleging that [Appellees] are exercising some portion of the sovereign power of the state. And furthermore, clearly alleges to me that [Appellees] were performing discretionary as opposed to ministerial acts" entitling them to assert public official immunity, as permitted by the Local Government Tort Claims Act ("LGTCA").[6]

---

**5.** Appellants, in their complaint, did not allege on the part of any defendant: (a) malice; (b) gross negligence: (c) recklessness; or, (d) action or inaction beyond the scope of employment.

**6.** The Local Government Tort Claim Act, at § 5–303(d), provides:

Notwithstanding the provisions of subsection (b) of this section, this subtitle does not waive any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by an employee of a local government.

## II.

A motion for summary judgment may be granted where "there is no genuine dispute as to any material fact and [the moving] party is entitled to judgment as a matter of law." Md. Rule 2–501. "An appellate court reviews a trial court's grant of a motion for summary judgment *de novo.*" *Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18, 24 (2003) (citations omitted). "The trial court will not determine any disputed facts, but rather makes a ruling as a matter of law. The standard of appellate review is whether the trial court was legally correct." *Id.* When reviewing a grant of summary judgment, this Court first determines whether a genuine dispute of material fact exists. *Id.* If no such dispute exists, we proceed to review determinations of law. *Id.* "The facts properly before the court, and any reasonable inferences that may be drawn from them will be construed in the light most favorable to the non-moving party." *Id.* at 579–80, 831 A.2d at 24. The only issue presented in this case is whether Appellees are public officials, a question of law, which we review *de novo.*[7] *See Muthukumarana v. Montgomery County,* 370 Md. 447, 478–80, 805 A.2d 372, 390–91 (2002).

## III.

Appellants maintain that the Circuit Court erred in concluding that Appellees were public officials entitled to the benefit

---

Md.Code (1987, 2002 Repl.Vol., 2004 Cum Supp.), § 5–303(d) of the Courts and Judicial Proceedings Article.

**7.** Although Appellees alternatively argue for affirmance of the trial court's judgment based on the Maryland Recreational Use Statute (Md.Code (1973, 2000 Repl.Vol.)), § 5–1101 et seq. of the Natural Resources Article, an alternative basis for their motion below, Maryland procedure directs that, "in appeals from grants of summary judgment, Maryland appellate courts, as a general rule, will consider only the grounds upon which the [trial] court relied in granting summary judgment." *Lovelace v. Anderson,* 366 Md. 690, 695, 785 A.2d 726, 729 (2001) (quoting *PaineWebber v. East,* 363 Md. 408, 422, 768 A.2d 1029, 1036 (2001)). *See also Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 536, 836 A.2d 655, 671 (2003). It is clear on this record that the trial judge, in granting summary judgment in favor of Appellees, relied exclusively on their public official immunity argument.

of public official immunity for merely negligent performance (or non-performance) of their duties. For the following reasons, we agree with Appellants.

In *Muthukumarana*, we outlined the doctrine of common law public official immunity:

> At common law, a government actor will enjoy qualified immunity from liability for his or her non-malicious acts where: (1) he is a public official rather than a mere government employee or agent; and (2) his tortious conduct occurred while he was performing discretionary, as opposed to ministerial, acts in furtherance of his official duties. *Ashburn v. Anne Arundel County*, 306 Md. 617, 622, 510 A.2d 1078, 1080 (1986) (quoting *James v. Prince George's County*, 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980)) (emphasis omitted). *See also Lovelace v. Anderson*, 366 Md. 690, 704–05, 785 A.2d 726, 734 (2001) (quoting *James*). Once it is established that the individual is a public official and the tort was committed while performing a duty which involves the exercise of discretion, a qualified immunity attaches; namely, in the absence of malice, the individual involved is free from liability. *Lovelace*, 366 Md. at 705, 785 A.2d at 734 (quoting *James*).

*Muthukumarana*, 370 Md. at 479, 805 A.2d at 391.

In *James*, this Court established four guidelines to aid in the analysis of whether a particular individual is a public official for purposes of common law immunity:

(i) whether the position was created by law and involves continuing and not occasional duties;

(ii) whether the holder performs an important public duty;

(iii) whether the position calls for the exercise of some portion of the sovereign power of the State; and

(iv) whether the position has a definite term for which a commission is issued and a bond or oath are required.

*James*, 288 Md. at 324, 418 A.2d at 1178 (citing *Duncan v. Koustenis*, 260 Md. 98, 105, 271 A.2d 547, 550 (1970)).

■ These four guidelines are not exclusive, nor do they carry equal weight in the analysis; rather, they are employed using the specific facts and circumstances of each individual's position. *James,* 288 Md. at 324, 418 A.2d at 1178. Moreover, even if an individual's position does not satisfy the guidelines, that individual may be "nevertheless considered a public official" if he or she meets one of the two additional scenarios provided in *Duncan.* *Muthukumarana,* 370 Md. at 479–80, 805 A.2d at 391 (quoting *Duncan,* 260 Md. at 106, 271 A.2d at 551, (citation omitted)). Those scenarios are an individual who exercises "a large portion of the sovereign power of government" or "can be called on to exercise police powers as a conservator of the peace." *Id.* (quoting *Duncan,* 260 Md. at 106, 271 A.2d at 551) (citation omitted) (emphasis omitted). *See also James,* 288 Md. at 324–25, 418 A.2d at 1178–79 (quoting *Duncan* ).

■■ Applying the guidelines to the analysis of the record, such as it is, in the present case, we conclude that Appellees are not public officials. A position "created by law" means that: (a) the office was created by Constitutional or legislative enactment, such as a statute or local ordinance; (b) an oath is generally prescribed; and (c) a commission is issued. *See Duncan,* 260 Md. at 108, 271 A.2d at 552. *See also Gary v. Bd. of Trustees of Employees' Ret. Sys.,* 223 Md. 446, 451, 165 A.2d 475, 478 (1960). There is nothing in this present record to indicate that the positions of Director of Parks, Capital Improvement Administrator, Recreation Superintendent, Park Superintendent and Safety Inspector, respectively, were positions "created by law," [8] "have a definite term for which a

---

8. The Frederick County Code created the Frederick County Parks and Recreation Commission and delegated to it the responsibility and authority to determine and adopt all necessary rules and regulations for the conduct of business and protection of properties under its control and to employ such personnel as it may consider necessary to administer its functions properly. Frederick County Code §§ 1–12–21, 28, 30 (2004). These sections of the code remain unchanged since enactment in 1959. Appellees are employed by the Frederick County Department of Parks and Recreation, but do not serve on the Frederick County Parks and Recreation Commission. Thus, while the Commissioners'

commission is issued," or "require a bond or an oath." *James,* 288 Md. at 324, 418 A.2d at 1178. The parties concede that the Appellees perform important public duties within the meaning of *Duncan.*[9] *Duncan,* 260 Md. at 105, 271 A.2d at 550. There is some dispute, however, as to whether the Appellees "exercise some portion of the sovereign power of the State." *Duncan,* 260 Md. at 105, 271 A.2d at 550.

Appellants contend that Appellees are "mere" local government employees. Appellees, however, argue that Appellees have "each been sued because their job titles reflect policy-making duties (exercising a portion of the State's sovereignty)." Appellees also argue that Appellants sued Appellees "because of their ability to make important policy." As stated by this Court in *Carder v. Steiner,* 225 Md. 271, 276, 170 A.2d 220, 222 (1961), "[i]mmunity from liability rests not on the dignity of the office but rather upon the nature of the function exercised."

The Circuit Court's express rationale for granting summary judgment in favor of Appellees was its perception that they "exercise some portion of the sovereign power of the State." Appellees, however, on this record, do not appear to be vested with any sovereign power. Sovereign power, in its simplest terms, means "the power to make and enforce laws." *Black's Law Dictionary* 1430 (8th ed.2004). As stated in *Duncan,* sovereign power generally contemplates someone serving "in a legislative or policymaking capacity." 260 Md. at 106, 271

---

positions may be said to have been created by law, to wit, the County Code, the positions of the Commission's employees may not be so characterized.

9. Positions previously considered by Maryland's appellate courts as providing an important public duty are discussed in *Muthukumarana,* 370 Md. at 480, 805 A.2d at 391 (911 operators and dispatchers); *Macy v. Heverin,* 44 Md.App. 358, 363, 408 A.2d 1067, 1070 (1979) (volunteer ambulance driver of a volunteer fire company and volunteer firemen); *Duncan,* 260 Md. at 107, 271 A.2d at 552 (teachers); *Bd. of Supervisors v. Attorney General,* 246 Md. 417, 439, 229 A.2d 388, 400 (1967) (delegate to a constitutional convention). Nonetheless, in each of these cases, none of the individuals was determined by the appellate courts to be a public official.

A.2d at 551. In *Duncan,* a public school teacher was not considered to possess sovereign power because he "d[id] not make rules and regulations or determine county education policy." *Id.* Using a similar touchstone here, Appellees do not satisfy this requirement because, by the nature of their duties, they do not make park rules, regulations, or policy.[10] Rather, they execute the policies determined and adopted by the Frederick County Parks and Recreation Commission, the body to which these powers are committed. *See supra* n. 8.

Because Appellees' positions do not satisfy a majority of the analytical guidelines found in *Duncan,* we look next to the additional scenarios where an individual may be "nevertheless considered to be a public official." *Duncan,* 260 Md. at 106, 271 A.2d at 551. The first requires that the individual exercise "a large portion of the sovereign power of government." *Duncan,* 260 Md. at 106, 271 A.2d at 551. As noted earlier, Appellees cannot satisfy this exception because they do not exercise any sovereign power of the State or Frederick County.

Appellees do not qualify as public officials under the second scenario because they are not "called on to exercise police powers as a conservator of the peace." *Id.* For example, Appellees do not serve in the capacity of any position the same as or similar to any previously held by us to come within this description. *See Livesay v. Baltimore County,* 384 Md. 1, 862 A.2d 33 (2004) (corrections officer); *Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 753 A.2d 41 (2000) (police officer); *Carder v. Steiner,* 225 Md. 271, 170 A.2d 220 (1961) (prison guard); *Clark v. Ferling,* 220 Md. 109, 151 A.2d 137 (1959) (prison superintendent); *Harris v. Mayor & City Council of Baltimore,* 151 Md. 11, 133 A. 888 (1926) (park

---

10. Appellants allege in their complaint that Appellees had numerous duties and responsibilities that included: maintenance of the Slope, assuring that the Slope was safe for public use, providing adequate protections to correct defects in the slope, closing the Slope because it was not safe, warning the public that the Slope was dangerous, and hiring competent people to maintain the Slope, duties that do not reflect the "power to make and enforce laws."

policeman); and *Cocking v. Wade,* 87 Md. 529, 40 A. 104 (1898) (sheriff). Furthermore, to the extent that Appellees exercise any authority, such has not been shown on this record to be characterized fairly as in the nature of "police power or conservator of the peace." *Duncan,* 260 Md. at 106, 271 A.2d at 551.

Accordingly, we conclude, on the state of this record, that Appellees are not "public officials" and may not assert as a defense common law public official immunity. We therefore need not address whether the conduct attributed to Appellees involved discretionary (and performed within the scope of their official duties) or ministerial acts.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; APPELLEES TO PAY COSTS.**