*Kathleen Clough v. Mayor & Council of Hurlock*
No. 15, September Term 2015

**Local Government Law – Municipal Charters – Employment Agreements.** A municipal charter that provides that an appointed municipal official serves "at the pleasure of the mayor" creates an at-will employment relationship between the municipal official and the municipality. The governing body of the municipality lacks authority to enter into an employment agreement with that official that confers a term of years of employment.

Circuit for Dorchester County
Case No. 09C13020635
Argued:  September 28, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 15

September Term, 2015

_____

KATHLEEN CLOUGH

v.

MAYOR & COUNCIL
OF HURLOCK

_____

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T.
(Retired, Specially
Assigned),

JJ.

_____

Opinion by McDonald, J.

_____

Filed: December 16, 2015

The charter of the Respondent Town of Hurlock provides that the Mayor is to appoint "the heads of all office, department, and agencies" of the Town with the approval of the Town Council. Those officials then "serve at the pleasure of the Mayor." In 2009, the Mayor-elect of the Town entered into a written employment agreement with Petitioner Kathleen Clough under which Ms. Clough would serve as one of those officials – Clerk-Treasurer of the Town – for a four-year term. Two and one-half years later, however, the Mayor terminated Ms. Clough from that position.

Ms. Clough brought this action against the Town for breach of contract, seeking damages and other relief. The Circuit Court dismissed her complaint, holding, among other things, that the four-year term provided in the employment agreement was contrary to the Town Charter and therefore ineffective – a holding affirmed by the Court of Special Appeals. We agree. The language of the Town Charter means that an official like the Clerk-Treasurer is an at-will employee and that the Mayor and Council lack authority to enter into an agreement conferring a fixed term of employment.

# I

## Background

### A. *Employment Agreement, Appointment, and Termination*

As this matter was resolved on a motion to dismiss the amended complaint, we assume the truth of the facts alleged in that complaint as we assess the merits of the dismissal. *RRC Northeast, LLC v. BAA Maryland, Inc.*,

413 Md. 638, 643, 994 A.2d 430 (2010). The amended complaint alleged the following facts:

On November 25, 2009, the Mayor-elect of Hurlock, Joyce Spratt, met with Ms. Clough and requested that she serve as the Clerk-Treasurer of the Town. Ms. Clough stated that she was willing to serve, so long as she had the security of an employment agreement. Ms. Spratt indicated that she did not object to an employment agreement. The two agreed to terms of employment, but Ms. Spratt cautioned that the Town Council would have to approve Ms. Clough's appointment and the employment terms. Ms. Clough prepared a written agreement, dated November 25, 2009, setting forth a four-year term of employment, a wage rate, and certain other terms and conditions of employment.

On December 7, 2009, Ms. Spratt took office as Mayor of Hurlock. The next day, the Town Council convened in executive session. During that session, Mayor Spratt presented Ms. Clough to the Council for appointment to the position of Clerk-Treasurer and notified the Council of the terms of the employment agreement. Immediately following the executive session, the Town Council approved the appointment of Ms. Clough as Clerk-Treasurer pursuant to the terms of the employment agreement. Sometime afterwards, Ms. Clough and Mayor Spratt executed the written employment agreement.

According to Ms. Clough, she faithfully performed her duties as Clerk-Treasurer. Nevertheless, on July 9, 2012, Mayor Spratt terminated Ms. Clough

2

from the position of Clerk-Treasurer without cause. At that time, there were approximately 18 months remaining of the four-year term in the written employment agreement.

## B.    *Complaint, Dismissal, and Appeal*

On July 5, 2013, Ms. Clough filed her original complaint in the Circuit Court for Dorchester County. The complaint alleged that the Town had violated the employment agreement by terminating her appointment before the expiration of the four-year term of the agreement. The complaint sought damages exceeding $75,000, and other unspecified relief, as a result of the alleged breach of contract. After the Town moved to dismiss the complaint, Ms. Clough filed an amended complaint alleging the same facts and cause of action with minor changes and seeking the same relief.

The Town moved to dismiss the amended complaint. One of the bases for that motion – and the one at issue before us – was that the four-year term in the employment agreement conflicted with the Town Charter and that, as a result, the employment agreement was void *ab initio* — that is, void from the beginning.[1]

---

[1] The Town also argued, in its motion to dismiss, that Mayor Spratt had executed the agreement before she assumed office and accordingly lacked authority to enter into the contract on behalf of the Town. Legal skirmishing on that issue led Ms. Clough to file the amended complaint and the Town to refile its motion to dismiss. The Circuit Court agreed with the Town that the employment agreement had been made prematurely in November 2009, but the Court of Special Appeals held that the timing of the execution of the agreement was a red herring, as the complaint clearly alleged that the Mayor and Town Council had ratified the agreement in December 2009, after Mayor Spratt had

Following a hearing, the Circuit Court granted the Town's motion to dismiss the amended complaint. The court based its ruling in part on the ground that the four-year term of employment in the agreement was inconsistent with the Town Charter.

Ms. Clough noted a timely appeal to the Court of Special Appeals. That court affirmed the Circuit Court in an unreported opinion. The intermediate appellate court reasoned that the provision of the Town Charter that "all agency heads serve at the pleasure of the Mayor" meant that the position of Clerk-Treasurer is an at-will position. The court thus held that it was inconsistent with the Town Charter for the Town to enter into an employment agreement that conferred a term of years on the Clerk-Treasurer.

We granted Ms. Clough's petition for *certiorari* to consider whether a municipal charter provision that provides that certain employees serve "at the pleasure of" the mayor precludes the municipality from entering into an employment agreement with such an employee for a term of years.

## II

## Discussion

### A. *Standard of Review*

Appellate review of a trial court decision to dismiss a complaint for failure to state a claim concerns whether that decision was "legally correct." *RRC*

---

taken office. Neither party has asked us to review that issue. Accordingly, it is not before us.

4

*Northeast, LLC*, 413 Md. at 644. In making that assessment, we consider the issue anew and accord no special deference to the legal conclusions of the lower courts. *Patton v. Wells Fargo Financial Maryland, Inc.,* 437 Md. 83, 95, 85 A.3d 167 (2014).

### B.     *Whether the Town Charter Precludes Employment for a Term of Years*

#### 1.     Municipal Charters

A municipal charter is foundational law for a town in the same way that a constitution is for a state or the nation. A charter "is the organic, the fundamental law, establishing basic principles governing relationships between the government and the people, and among the various governmental branches and bodies." *Cheeks v. Cedlair Corp.*, 287 Md. 595, 607, 415 A.2d 255 (1980). A municipal charter is construed according to the same rules of construction that govern the construction of statutes. *O'Connor v. Baltimore County*, 382 Md. 102, 113, 854 A.2d 1191 (2004).

Maryland municipalities have had home rule under the Maryland Constitution since the adoption of the municipal home rule amendment in 1954. Chapter 53, Laws of Maryland 1954 (ratified November 2, 1954) *adding* Article XI-E to the Maryland Constitution.[2] As part of the implementing legislation

---

[2] Prior to adoption of the home rule amendment, municipalities in Maryland were entirely creatures of the Legislature. They were created by special acts of the Legislature and "could exercise only such powers as were conferred on them, either specifically or by necessary implication, by public local or public general laws." H. Warren Buckler, Jr., *Municipal Home Rule in Maryland* 3 (Maryland Municipal League 1955). The principal purposes of the

related to that constitutional amendment, the General Assembly enacted a model municipal charter that municipalities were free to adopt. Chapter 258, Laws of Maryland 1955, *codified at* Maryland Code, Article 23B, *repealed by* Chapter 228, Laws of Maryland 1994.

The model charter provided for a mayor-council form of government. Among other things, the model charter set forth the basic structure of municipal government, including the council's powers, the mayor's powers, and provisions concerning municipal personnel, finance, special assessments, property, and other matters. Approximately 40% of Maryland municipalities had adopted the basic form and structure of the model municipal charter by the time the General Assembly repealed the model in 1994. D. Wayne Rhodes & David Sann, *A Comparison of Charter Provisions in Maryland Municipal Corporations* (Institute for Governmental Service 1994) at 2.[3]

2.    The Hurlock Charter

The Town of Hurlock was incorporated as a municipality in 1892. In 1976, the Town adopted its current charter, which closely tracks the model provided

---

home rule amendment were two-fold: (1) to provide broader autonomy to municipalities; and (2) to reduce the large volume of municipal legislation regularly enacted each year by the Maryland General Assembly. *See* M. Peter Moser, *County Home Rule – Sharing the State's Legislative Power with Maryland Counties*, 28 MD. L. REV. 327, 335 (1968).

[3] At the time of the repeal, an analysis of the model charter commissioned by the House Commerce and Government Matters Committee concluded that several model charters were readily available to municipalities and that a statutory model, which was only intended to be optional, was unnecessary. D. Wayne Rhodes, et al, *supra*, at 5.

by the General Assembly.[4]  Since that time, the Hurlock Charter has remained largely unchanged, except for the addition of provisions relating to land annexation and urban renewal.

*Mayor and Town Council*

Consistent with the model charter, the Hurlock Charter provides for a mayor-council form of government.  The Town Council consists of five elected councilmembers and exercises legislative authority.  Hurlock Charter, §301.  The Mayor is the chief executive officer of the Town, has a veto power with respect to legislation, and is charged generally to execute ordinances and to oversee the administration of the Town government.  Hurlock Charter, §404.

*Clerk-Treasurer*

The Town Charter also provides for the position of Clerk-Treasurer and assigns various duties to that position.  Hurlock Charter, §801.  The office of Clerk-Treasurer in a Maryland municipality has been described as follows:

> The functions of the clerk involve attending council meetings, recording and compiling meeting minutes, and acting as the custodian of municipal records.  Depending on the charter, the clerk may have other duties as well, such as personnel and financial administration.  Additionally, the treasurer may be the community's chief financial officer who is responsible for collecting and managing all funds, accounting and financial reporting, and budget preparation. …

> It is not uncommon in small communities to find the positions of clerk and treasurer combined. …  The clerk, treasurer, and clerk-

---

[4] In its 1994 study of the model charter and its adoption by various municipalities, the Institute for Governmental Service concluded that the Hurlock Charter followed the general form of the model charter.  D. Wayne Rhodes, et al., *supra*, Section on Dorchester County, at 2.

> treasurer positions are visible and important in small municipalities …. This is particularly true when the elected officials are essentially part-time employees, meet infrequently, and have little time or expertise to devote to managing the day-to-day affairs of the municipality.

Maryland Municipal League, *Appointed Officials in Maryland* < http://www. mdmunicipal.org/index.aspx?NID=416 > [http://perma.cc/KWC6-EJ2E] (last visited December 14, 2015).

That appears to be an apt description of the office of Clerk-Treasurer as it appears in the Hurlock Charter. The Clerk-Treasurer serves as clerk to the Mayor and Council, is to keep records of their proceedings, and is the custodian of various other town records – including records setting the corporate limits of the Town, municipal legislation, election results, and the Town budget. Hurlock Charter, §§201, 310, 613, 702, 801. In regards to Town finances, the Clerk-Treasurer is charged with making purchases on behalf of the Council, and is one of two required signatories on Town checks. *Id.*, §§707, 718. The Clerk-Treasurer takes an oath of office and is to provide a surety bond. *Id.*, §§1201(a), 1202.

While the Hurlock Charter creates the position of Clerk-Treasurer and assigns various duties to that official, it does not provide any special direction as to the appointment or removal of an individual from that position.[5] Accordingly,

---

[5] In contrast, the provision of the Hurlock Charter that creates the position of Town Attorney specifically provides for appointment by the Mayor with the approval of the Council and further provides that the Town Attorney serves at the pleasure of the Council. Hurlock Charter, §802.

we look to the general provision concerning the appointment and removal of office, department, and agency heads.

*Appointment and Removal of Agency Heads and Employees*

Like the model municipal charter, the Hurlock Charter generally provides for the Mayor to appoint Town employees. The Council also has a role, depending on the type of employee. The respective roles of the Mayor and Council are set out in §404(b) of the Charter, which provides:

> The Mayor, with the approval of the Council, shall appoint the heads of all offices, departments, and agencies of the Town government as established by this Charter or by ordinance. *All office, department, and agency heads shall serve at the pleasure of the Mayor.* All subordinate officers and employees of the offices, departments, and agencies of the Town government shall be appointed and removed by the Mayor, in accordance with rules and regulations which may be adopted by the Council.

Hurlock Charter, §404(b) (emphasis added).[6] Thus, the Mayor is to appoint, with the approval of the Council, the heads of all "offices, departments, and agencies" of the Town's government, who then "serve at the pleasure of the Mayor." The parties have focused on what it means to serve "at the pleasure of the Mayor."[7]

---

[6] Section 404(b) of Hurlock's Charter is virtually identical to §21(b) of the model charter that appeared in the repealed Article 23B of the Maryland Code.

[7] In the Circuit Court and Court of Special Appeals, Ms. Clough suggested that the Clerk-Treasurer is not the "head" of an office, department, or agency, but a "subordinate employee." The Court of Special Appeals elected not to resolve the issue, reasoning that the complaint was based solely on the employment agreement and that any remedy for removal of a subordinate employee would instead involve reference to "rules and regulations … adopted by Council." Before us, Ms. Clough has not pressed the contention that the Clerk-Treasurer is a "subordinate employee."

9

3. Analysis

` The parties posit different interpretations of §404(b) of the Charter. The Town contends that the provision that agency heads "serve at the pleasure of the Mayor" means that they are at-will employees. While conceding that at-will employment may be the norm under Maryland law, Ms. Clough contends that §404(b) allows a mayor to exercise discretion by entering into an employment agreement with an agency head for a fixed term. She suggests that a mayor may voluntarily agree to such a limitation on his or her "pleasure" in order to attract high quality employees for important agency positions. But, in our view, a charter embodies policies deemed important to the functioning of the municipality and may preclude an official from voluntarily surrendering the discretion that the charter confers on an office.

*"Serves at the pleasure of"*

The first step in construing §404(b) is to consider the usual meaning of its text. The operative phrase — "serves at the pleasure of" — is commonly understood to refer to employment at will. *See, e.g., Forster v. State of Maryland Office of the Public Defender*, 426 Md. 565, 582, 45 A.3d 180 (2012) (under §11-305(b)(1) of the State Personnel & Pensions Article, certain State employees "are at-will employees who serve at the pleasure of the appointing authority"); *Public Service Comm'n v. Wilson*, 389 Md. 27, 55, 882 A.2d 849 (2005) ("the addition of [statutory] language stating that each … position 'serves at the pleasure of the Commission' was necessary to indicate that, unlike some other specifically

10

authorized appointed positions, these positions would not have any set term, but rather would be subject to termination as the Commission saw fit."); *Clark v. O'Malley*, 186 Md. App. 194, 223, 973 A.2d 821 (2009), *aff'd*, 434 Md. 171, 73 A.3d 1086 (2013) (amendment of public local law to allow police commissioner to be removed "at the pleasure of the Mayor" permitted termination of commissioner without cause); 79 *Opinions of the Attorney General*, 419, 420 (1994) (explaining that the tenure of deputy sheriffs who serve "during the pleasure of the sheriff" is subject to the discretion of the sheriff); *cf. Adler v. American Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464 (1981) ("The common law rule, applicable in Maryland, is that an employment contract of indefinite duration, that is, at will, can be legally terminated *at the pleasure of* either party at any time.") (emphasis added).

There is no indication that the phrase in the Hurlock Charter was intended to have a different, peculiar meaning. As indicated above, §404(b) was derived from a model municipal charter that was enacted in 1955. The phrase "serve at the pleasure of" had the same meaning then as it does today. *See, e.g., Gary v. Bd. of Trustees of Employees' Retirement Sys.*, 223 Md. 446, 449 n.3, 165 A.2d 475 (1960) ("there are officers of the State who do not have a fixed term [of office]. An example is the Clerk of the Court of Appeals, who serves at the pleasure of the Court.")

*Altering the at-will relationship "at the pleasure of" the mayor*

Ms. Clough argues that the "pleasure" of the Mayor might encompass a decision to enter into an employment contract with an agency head for a term of years in order to attract a talented individual to the position. In other words, Ms. Clough would extend the phrase "serve at the pleasure of the Mayor" from the creation of an at-will employment relationship into an option for the Mayor to alter the at-will employment relationship "at the pleasure of the Mayor." But this interpretation is inconsistent with the common understanding of the phrase and effectively would allow a mayor to undermine the evident purpose of §404(b).

Under Ms. Clough's interpretation, one Mayor could enter into an employment contract that would limit the discretion of a successor mayor contrary to §404(b). For example, if Mayor Spratt had left office for some reason less than two years into her term, pursuant to the Town Charter, the Town would hold a special election to select a successor.[8] Under Ms. Clough's interpretation, the newly elected Mayor would not be able to exercise the power granted by §404(b) of the Charter to appoint agency heads and would be forced

---

[8] Section 405 of the Town Charter provides:

> If, within a period of two years following any mayoral election, the office of Mayor becomes vacant due to the death, resignation, or any other incapacity, a special election shall be held to elect a successor to serve the remainder of the present term. If such a vacancy occurs after the first two years of the present term, the Council shall elect one of their new members to as Mayor until the next regularly scheduled election.

Hurlock Charter, §405.

to accept the agency head selected by the predecessor Mayor for whatever period of time remained under the agency head's contract. Thus, under Ms. Clough's interpretation, a mayor might not only bind his or her own discretion, but also that of a successor mayor, clearly contrary to the design of the Charter. In that situation, the agency head would not be serving "at the pleasure of the Mayor," as provided by §404(b).

The Minnesota Supreme Court reached a similar conclusion in a case involving a school board, a governing statute that provided that the school superintendent served "at the pleasure of" the school board, a contract between the school board and an individual to serve as superintendent for a three-year term, and the termination of that individual before the end of that term. In holding that the school board had no authority to voluntarily surrender the discretion conferred by statute to employ a superintendent at-will in favor of a term of employment, the Minnesota court explained:

> This right which the board has to release the superintendent at its pleasure is a public right, and exists for a public purpose. The school board cannot by contract deprive itself of such right…. It cannot renounce or agree not to exercise its power of removal at pleasure…. To hold that the contract in question is binding for the fixed term would be to allow the school board to deprive itself and its successors of governmental powers which have been granted to it by the Legislature for a public purpose.

*Jensen v. Independent Consol. School Dist. No. 85*, 199 N.W. 911, 913 (Minn. 1924).

*The public purpose underlying the charter's choice of at-will employment*

Vital to the success of the mayor-council form of government is that the mayor have sufficient authority to execute his or her duties. The discretion to assemble the key personnel who assist the mayor in carrying out those duties – and to make substitutions when needed – is essential. This was explained well by the Court of Special Appeals in its opinion in this case:

> The "serve at the pleasure of" language applies only to "office, department, and agency heads" and not to subordinate officers, who may only be removed "in accordance with [the] rules and regulations adopted by the [Town] Council" … The difference makes sense… [E]xecutives like the Mayor customarily (and appropriately) appoint and rely on a small group of trusted senior staff and advisors. *Ideally, this inner circle serves well and for the executive's term; in reality, these relationships sometimes falter, and the executive needs the administrative discretion to change course as circumstances require. This principle is not limitless . . . but it counsels against a reading of the Charter that restricts the Mayor's ability to react and adapt.* We do not know from the complaint why the Mayor decided to terminate Ms. Clough's employment as Clerk-Treasurer—as postured, we are evaluating a termination decision not grounded in "just cause" or any stated cause at all. But for inner circle employees, it is enough that the executive no longer trusts or can rely upon the employee, that the two no longer get along, or that the employee isn't committed to the executive's mission, even if the employee otherwise is performing her role competently (or even well)[.]

No. 1917, slip op. at 16 (emphasis added).

This policy has been incorporated into the Town Charter in the discretion accorded to the Mayor with respect to the removal of agency heads. We agree with the Court of Special Appeals that any interpretation that would limit the mayor's ability to react and adapt to local conditions would run counter to the

14

design of the Charter. For these reasons, we hold that §404(b) precludes the Town from employing "office, department, and agency heads" for a fixed term.

*Summary*

This Court has held that a municipality is not bound by those contracts entered into by its agents beyond that authority granted by the municipal charter or other governing law. *River Walk Apartments, LLC v. Twigg*, 396 Md. 527, 548, 914 A.2d 770 (2007) (city not bound by contracts entered into by mayors without legislative authorization); *see also Gontrum v. Mayor and City Council of Baltimore*, 182 Md. 370, 375, 35 A.2d 128 (1943) (municipality not bound by contract if the officer entering into the contract lacked authority to enter into such a contract); *Horn v. City of Baltimore*, 30 Md. 218, 223 (1869) (when a municipality's agents act outside of their authority "their acts, although done *colore officii,* and upon pretence of law, are no more binding upon the corporators than the acts of an agent in any other case can bind his principal, when done beyond the scope of the authority conferred."). As the Town Charter does not allow the Town to appoint a Clerk-Treasurer for a term of years, neither Mayor Spratt nor the Town Council had authority to enter into a contract with a fixed term of years, and that contract is void and unenforceable.

## III

## Conclusion

For the reasons stated above, the Mayor and Council of Hurlock lacked authority under the Town Charter to enter into an employment contract with

respect to the position of Clerk-Treasurer for a fixed term.  Accordingly, as a matter of law, Ms. Clough cannot recover damages or other relief based on an allegation of breach of contract.  The Circuit Court properly dismissed the amended complaint.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.  COSTS TO BE PAID BY PETITIONER.**