SUPERIOR COURT
OF THE
STATE OF DELAWARE

E. SCOTT BRADLEY
JUDGE

1 The Circle, Suite 2
GEORGETOWN, DE 19947

August 18, 2016

Michael P. Kelly, Esquire
Daniel J. Brown, Esquire
McCarter & English, LLP
405 N. King Street, 8th Floor
Wilmington, DE 19801

David L. Finger, Esquire
Finger & Slanina, LLC
1201 North Orange Street, 7th Floor
Wilmington, DE 19801

Darryl A. Parson, Esquire
Wilson B. Davis, Esquire
New Castle County Office of Law
87 Reads Way
New Castle, DE 19720

> **RE:** ***Grimaldi v. New Castle County, et al.***
> **C.A. No: 15C-12-096 (ESB)**

Dear Counsel:

This is my decision on the Motion to Dismiss the Complaint for Failure to State a Claim filed by Defendants Thomas P. Gordon and New Castle County seeking dismissal of the complaint filed against them by Plaintiff David Grimaldi. Gordon is the County Executive. Grimaldi was Gordon's Chief Administrative Officer until Gordon terminated him on October 29, 2015. All was apparently well between Gordon and Grimaldi until September of 2015, when Grimaldi got involved in matters involving County Council President Christopher Bullock, County Chief of

Staff James D. McDonald, and County Risk Manager Cheryl McDonaugh.

On September 29, 2015, County Council President Christopher Bullock told Grimaldi that he had heard a rumor that Grimaldi was helping the political campaign of Bullock's potential primary opponent. Bullock told Grimaldi that he had told Gordon to fire Grimaldi over the incident. The next day, Grimaldi and Gordon talked about the matter. Gordon allegedly told Grimaldi that if he was going to help Bullock's opponent, then "you can't work here."

Grimaldi was involved in matters involving the brother and son of County Chief of Staff James D. McDonald. The County had hired Robert McDonald, Esquire to represent the County in a lawsuit. Robert McDonald is the brother of Chief of Staff James D. McDonald. Robert McDonald had previously represented clients in litigation against the County. Grimaldi thought this might be a conflict of interest and potential violation of the County Code. Grimaldi sent a text message to Gordon about the matter and an e-mail to the County Attorney asking him to look into it. Grimaldi never got a response from either man and nothing was ever done.

County employees were complaining to Grimaldi that the County Merit System was being manipulated so that James McDonald, Jr., could get a County job as an equipment operator. James McDonald, Jr., is the son of Chief of Staff James D. McDonald. Grimaldi talked to Gordon about the matter on October 19, 2015.

2

Gordon allegedly told Grimaldi to "back off" his investigation because he "always took care of people's family."

Grimaldi was involved in a matter involving County Risk Manager Cheryl McDonaugh. McDonaugh was Gordon's campaign treasurer. After returning to office, Gordon appointed McDonaugh as an Executive Assistant. Gordon then, according to Grimaldi, manipulated the County Merit System so that McDonaugh could be hired as County Risk Manager, a position that Grimaldi did not think McDonaugh was qualified to hold. Apparently, Gordon routinely told people that McDonaugh had graduated from the University of Delaware. Grimaldi was unable to verify that and asked the County Chief Human Resources Officer ("CHRO") to review McDonaugh's personnel file to see if she had graduated from the University of Delaware. Gordon apparently got wind of this and told the CHRO to block Grimaldi's access to McDonaugh's personnel file. Grimaldi made a formal request under Delaware's Freedom of Information Act for McDonaugh's resume on November 1, 2015. The County denied his request on November 17, 2015.

Grimaldi believed that Gordon and McDonaugh shared a close personal relationship. Grimaldi did not think that McDonaugh did her job very well and that she used her close personal relationship with Gordon to engage in questionable practices and abuse County employees. Grimaldi discussed his concerns about

3

McDonaugh with Gordon.

On October 22, 2015, Grimaldi was driving through Elsmere, Delaware, when he was stopped by an Elsmere police officer. Apparently, Grimaldi's license had been suspended for his failure to pay a traffic fine in Maryland. During the 20-minute ticketing process, Grimaldi said to the police officer, "you know, your Mayor works for me." After getting the ticket, Grimaldi called County Executive Assistant and Elsmere Mayor Steve Burg for a ride home. Grimaldi was initially unable to reach Burg. Grimaldi's girlfriend came to the scene and gave him a ride home. Grimaldi and Burg spoke later that night. Burg offered to have Grimaldi's ticket "yanked." Grimaldi declined Burg's offer.

Grimaldi and Gordon discussed the ticket incident by phone on October 29, 2015. Their conversation then turned to the complaints against McDonaugh. Grimaldi told Gordon, "every day there's an incident with Cheryl [McDonaugh] but you defend her 100% because your [of] [your] personal relationship." Gordon responded, "hey, fuck you, Dave, you're fired. You're fired Dave." Gordon then told the press and public that he had fired Grimaldi for using his position to try to get out of the traffic ticket.

Grimaldi filed his six-count complaint against Gordon and the County on December 10, 2015.

1. In Count I Grimaldi claims that Gordon and the County violated the New Castle County Employee Protection Act when they fired him for reporting to Gordon violations of the County Code by other County employees.

2. In Count II Grimaldi claims that Gordon and the County violated the Delaware Employee Protection Act when they fired him for reporting to Gordon violations of the County Code by other County employees.

3. In Count III Grimaldi claims that Gordon violated his First Amendment Rights of freedom of political belief and association when Gordon threatened to terminate Grimaldi if he supported a member of the same political party who was planning to undertake a primary challenge to County Council President Christopher Bullock.

4. In Count IV Grimaldi claims that Gordon defamed him when Gordon told the press and public that he fired Grimaldi for using his position to try to get out of a traffic ticket when Gordon really fired him for complaining to Gordon about McDonaugh.

5. In Count V Grimaldi claims that he is entitled to a severance package including two months' salary and two months of extended health care benefits.

6. In Count VI Grimaldi claims that the County violated Delaware's Freedom of Information Act by refusing to give him a copy of McDonaugh's resume.

## STANDARD OF REVIEW

The standards for a Rule 12(b)(6) motion to dismiss are clearly defined. The Court must accept all well-pled allegations as true.[1] The Court must then determine whether a plaintiff may recover under any reasonable set of circumstances that are susceptible of proof.[2] When deciding a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint, and draws all reasonable inferences in favor of the plaintiff.[3] As a general rule, when deciding a Rule 12(b)(6) motion, the Court is limited to considering only the facts alleged in the complaint and normally may not consider documents extrinsic to it. There are two exceptions, however, to this general rule.[4] "The first exception is when the document is integral to a plaintiff's claim and incorporated into the complaint. The second exception is when the document is not being relied upon to prove the truth of its contents."[5] "Where allegations are merely conclusory, however, (*i.e.*, without specific allegations of fact

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[2] *Id.*

[3] *Ramunno v. Crawley*, 705 A.2d 1029 (Del. 1998).

[4] See *Vanderbilt Income & Growth Assocs., L.L.C., v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612 (Del. 1996).

[5] *Vanderbilt*, 691 A.2d at 613.

to support them) they may be deemed insufficient to withstand a motion to dismiss."[6] Dismissal will not be granted if the complaint "gives general notice as to the nature of the claim asserted against the defendant."[7] A claim will not be dismissed unless it is clearly without merit, which may be either a matter of law or fact.[8] Vagueness or lack of detail in the pleaded claim are insufficient grounds upon which to dismiss a complaint under Rule 12(b)(6).[9] If there is a basis upon which the plaintiff may recover, the motion is denied.[10]

## DISCUSSION

### Counts I and II

Grimaldi claims that the County violated the County Employee Protection Act ("NCCEPA")[11] and the Delaware Employee Protection Act ("DEPA")[12] when it fired him for reporting to Gordon violations of the County Code by other County

---

[6] *Lord v. Souder*, 748 A.2d 393, 398 (Del. 2000).

[7] *Diamond State Telephone v. University of Delaware*, 269 A.2d 52, 58 (Del. 1970).

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] NCC Code §§2.03.300-305.

[12] 19 *Del. C.* §1701-08.

7

employees.[13]   The County argues that Grimaldi has failed to state a claim for which relief may be granted because he was an at-will employee who served at the pleasure of Gordon and, as such, could be terminated with or without cause pursuant to 9 *Del. C.* §1120(a).

NCCEPA states, in part, the following:

> The County shall not discharge, threaten, reassign or otherwise adversely impact an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:
>
> > A.   The employee reports, in a written or oral communication to an elected official, or in a written communication to a non-elected public official, a suspected violation of a law, rule or regulation adopted by the County, the State or the United States, a violation of a court order, a misuse of public funds, or an action which is of substantial and specific danger to the public health, safety or welfare unless the employee knows that the report is without merit.

DEPA states, in part, the following:

> (b) No public employee shall be discharged, threatened or otherwise discriminated against with respect to the terms or conditions of employment because that public employee reported, in a written or oral communication to an elected official, a violation or suspected violation of a law or regulation promulgated under the law of the United States, this State, its school districts, or a county or municipality of this State unless the employee knows that the report is false.

---

[13]   Grimaldi acknowledges that he has no claims against Gordon under NCCEPA and DEPA.

8

NCCEPA and DEPA both provide that an employee claiming a violation of either law may bring a civil action for appropriate injunctive relief, actual damages, or both.

9 *Del. C.* §1120 (a) provides as follows:

> The County Executive shall appoint a Chief Administrative Officer who shall serve at the pleasure of the County Executive. The Chief Administrative Officer shall be qualified by education, training and experience for the duties to be performed.

A person who serves "at the pleasure of another" is deemed to be an employee-at-will who may be terminated for any reason or no reason.[14]

Grimaldi argues that NCCEPA and DEPA are exceptions to §1120(a), reasoning that actions brought pursuant to "whistleblower" laws like these are "public policy" exceptions to the "employee-at-will" doctrine and treating them as such advances the public's interest in a government free of corruption.

The County argues that NCCEPA and DEPA should not apply to Grimaldi because (1) Grimaldi's right to pursue reinstatement to his job under NCCEPA and DEPA would conflict with Gordon's right under §1120(a) to terminate him without consequence; (2) the interpretation that best harmonizes all three laws is one that provides that NCCEPA and DEPA do not apply to a high-level employee like

---

[14] *Mayer v. Hurlock*, 127 A.3d 554, 559-60 (Md. App. 2015).

Grimaldi; (3) Grimaldi's interpretation would allow all of the high-level State employees who serve at the pleasure of the Governor to bring a claim for reinstatement against the Governor; (4) Grimaldi occupied such a high-level position in County government that Gordon must be able to terminate him at his pleasure in order to properly run the County government; (5) the Delaware Courts have only recognized two narrow exceptions to the employee-at-will doctrine[15]; and (6) the Delaware legislature has declined opportunities to expand those two exceptions.[16]

Grimaldi and the County have both made persuasive arguments that advance their respective positions.[17] However, I believe the more persuasive argument is that the whistleblower laws were never intended to limit the County Executive's right to hire and fire his Chief Administrative Officer without consequence because the County Executive needs a Chief Administrative Officer of his own choosing in order

---

[15] *Finch v. Hercules Incorporated*, 809 F.Supp. 309, 311 (D. Del. 1992).

[16] In *Schuster v. Derocili,* 775 A.2d 1029 (Del. 2001),the Delaware Supreme Court held that Delaware recognizes a common law cause of action for breach of a covenant of good faith and fair dealing implied in an at-will employment contract where a plaintiff alleges that her termination directly resulted from her refusal to succumb to sexual harassment in the workplace. Thus, the Supreme Court recognized a cause of action that could be pursued outside the procedural process for pursing discrimination claims set forth in the Delaware Discrimination in Employment Statute. After *Schuster* was decided, the Delaware legislature amended the Delaware Discrimination in Employment Statute to make the procedural process set forth therein to be the exclusive remedy for discrimination claims.

[17] Grimaldi and the County also discussed various rules of statutory construction. I did not find any of them to be helpful.

to carry out his policies. Gordon is the County Executive. The County Executive is an elected position and is the highest position in County government. Grimaldi was the Chief Administrative Officer. The Chief Administrative Officer is a non-elected position and is the second highest position in County government. The County Executive appoints the Chief Administrative Officer who serves at the County Executive's pleasure.[18] Gordon is certainly entitled to work with a "second-in-command" that is loyal, cooperative, trustworthy, and willing to carry out his policies and directives without complaint. Once Gordon determined that he could no longer work with Grimaldi, then it was not possible for Grimaldi to carry out his duties as Chief Administrative Officer. Similarly, Gordon's ability to carry out his duties as County Executive would be jeopardized without a Chief Administrative Officer that he could work with. It would create an untenable situation for Gordon if a Court forced him to accept Grimaldi as his "second-in-command" when he had lost confidence in Grimaldi. That is why Grimaldi and others like him in State government who serve at the pleasure of the Governor must sacrifice their rights under the whistleblower laws so that the County Executive and Governor can effectively and efficiently run their respective governments and it is why I have concluded that NCCEPA and DEPA with their job reinstatement provisions do not

---

[18] 9 *Del. C.* §1120(a).

apply to Grimaldi. While I am confident that the Delaware Legislature is interested in good government, as evidenced by its passage of DEPA, I certainly do not believe that the legislature passed all of those statutes providing that the County Chief Administrative Officer and various high-level State appointees shall serve at the pleasure of the County Executive and Governor, respectively, only to have those persons file lawsuits for reinstatement under NCCEPA and DEPA where applicable. My decision, I believe, is one that gives full effect to 9 *Del. C.* §1120(a) and the other "at pleasure statutes," and only infringes on NCCEPA and DEPA by excluding from them the County Chief Administrative Officer and those State appointees that serve at the pleasure of the Governor. That does not seem to me to be an unreasonable result. The alternative would create havoc at the highest levels of County and State government. Therefore, I will dismiss Counts I and II.

### COUNT III

Grimaldi claims that Gordon violated his First Amendment rights of freedom of political belief and political association when Gordon threatened to terminate Grimaldi if he supported a member of the same political party who was planning to undertake a primary challenge to County Council President Christopher Bullock.

I am satisfied that Grimaldi has properly pled a regular retaliation claim. In order to do this, a plaintiff must allege: (1) constitutionally protected conduct; (2)

12

retaliatory action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) a crucial link between the constitutionally protected conduct and the retaliatory action.[19] Grimaldi alleged in his complaint that Gordon threatened to fire him if he supported a primary challenger to County President Christopher Bullock. Grimaldi's allegation meets all three of the pleading requirements. Political belief and association are protected by the First Amendment. The threat of termination of one's employment would certainly deter a person of ordinary firmness from exercising his constitutional rights. Lastly, there is no doubt that there is a direct link between Grimaldi's exercise of his rights and Gordon's threat to terminate Grimaldi for doing so.

The contested issue regarding this claim is whether Grimaldi had to allege that his position as Chief Administrative Officer did not require political affiliation. This matters because the political affiliations of lower level political players are constitutionally protected from government retaliation, whereas the political affiliations of "policymakers" are not similarly protected.[20] Policymaking staffers may be permissibly fired based on their views and associations.[21] The "policymaker's

---

[19] *Thomas v. Independence Tp.,* 463 F.3d 285, 296 (3d Cir. 2006).

[20] *Krause v. Buffalo and Erie County Workforce Development Consortium, Inc.,* 425 F. Supp. 352 (W.D.N.Y. 2006).

[21] *Id.*

exception" to the First Amendment retaliation doctrine reflects the fact that the people's chosen representatives must be allowed to hire aides who share their political views and fire those aides who do not.[22] A "policymaker" has been defined as someone for whom political affiliation is an appropriate requirement where there is a rational connection between shared ideology and job performance.[23]

It is well recognized that the assertion that an employment position is a policy-making position is an affirmative defense.[24] An affirmative defense cannot be raised on a motion to dismiss because an affirmative defense does not have to be pled in the complaint.[25] However, when facts in the complaint support the affirmative defense, then it may be considered.[26] The Court may also take judicial notice of the law and consider it as part of the complaint.[27]

The factors to consider when determining whether an employee is a policymaker are as follows:

> Whether the employee has duties that are non-discretionary or

---

[22] *Id.*

[23] *Id.*

[24] *Krause,* 425 F. Supp. 352.

[25] *Nigro v. City of Chicago*, 1992 WL 112239 (N.D. Ill. May 20, 1992).

[26] *Id.*

[27] Delaware Rules of Evidence Rule 201.

14

non-technical, participates in discussions or other meetings, prepares budgets, possesses the authority to hire and fire other employees, has a high salary, retains power over others, and can speak in the name of policy makers.[28]

The Third Circuit has suggested that the "key factor seems to be not whether the employee was a supervisor or had a great deal of responsibility, but whether [the employee] has meaningful input into decision making concerning the nature and scope of a major program."[29]

I have considered Grimaldi's broad statutory authority, the allegations he made in his complaint about his extensive involvement in important County activities, and a case involving a lower-level County executive who was deemed to hold a policymaking position requiring political affiliation and concluded that Grimaldi was a policymaker whose job required political affiliation.

## Grimaldi's Statutory Authority

Grimaldi's statutory authority as Chief Administrative Officer is set forth in 9 *Del. C.* §1121(a). The Chief Administrative Officer assists the County Executive with his duties and responsibilities and, subject to the policies and directives of the County Executive, shall have general supervision over the executive, administrative

---

[28] *Galli v. New Jersey Meadowlands Commission,* 490 F. 3d 265, 271 (3d Cir. 2007).

[29] *Id.* at 271.

and operational departments of New Castle County.[30] The Chief Administrative Officer, on behalf of the County Executive, prepares the annual operating budget, capital program and capital budget.[31] The Chief Administrative Officer also supervises the execution of the budget, the preparation of reports and information concerning the status of the financial and other affairs of New Castle County in order to keep the County Executive, County Council and the public informed as to all offices, departments, and agencies receiving appropriations from the County.[32] In sum, Grimaldi has broad statutory authority over the County's budget and executive, administrative and operational departments.

## Grimaldi's Complaint

Grimaldi's complaint lists a number of accomplishments indicating the policymaking role he played in County government: (1) eliminating structural deficits and producing an operating surplus in each year in office, thereby allowing the County Executive to keep his "no tax increase" pledge; (2) restructuring the County's debt and realizing a $12 million saving, making it the most successful bond deal in County history, allowing the County to shrink the year-over-year budget for only the

---

[30] 9 *Del. C.* §1121(a).

[31] 9 *Del. C.* §1121(b).

[32] *Id.*

16

fourth time it its history; (3) leading the drastic fiscal year 2015 financial turnaround, which eliminated a mid-year $2.5 million projected deficit and replaced it with a surplus. The surplus was large enough to allow for a one-time bonus of $750 to each County employee while still ending the year in the black; (4) restructuring the County employee retirement plan to avoid $600,000 in surrender fees; (5) discovering that the County's financial statements were wrong and misrepresented the County's investment risk, with 16% of the reserve portfolio in junk bonds, and moving the portfolio to UBS and bringing investments in line with the financial statements, thereby reducing the risk of the County's investments and saving hundreds of thousands of dollars per year in investment fees; (6) initiating and leading the County's first-ever Comprehensive Economic Development Plan, the Anti-Heroin marketing campaign, the successful opposition to the Barley Mill Plaza rezoning, Comprehensive Ethics Reform, the Open Government platform, the new County Website, and the Route 9 Innovation Center and revitalization project; ( 7 ) serving as key policy advisor to the County Executive and causing his public positions on key progressive issues such as raising the County minimum wage, supporting marriage equality, and opposing the Trans Pacific Partnership Agreement, which initiatives furthered Gordon's popularity among Democratic voters; and (8) serving as the architect of the Delaware Board of Trade (DBOT) project, the Chemours incentive

package, and leading the County effort in assisting the Governor's Office for the JP Morgan expansion project.

## *Freeberry v. Coons*

The Third Circuit in *Freeberry v. Coons*[33] found that position of General Manager of the Special Services Department for the County was a policymaking position that required political affiliation. The General Manager of this County department has responsibility over County infrastructure and facilities.[34] It is a lower-level position than Chief Administrative Officer.

There is no doubt that Grimaldi was a high-level policymaker for the County. Grimaldi held the second-highest position in the County government. Grimaldi had supervisory authority over the executive, administrative and operational departments of the County. Grimaldi was responsible for preparing the annual operating budget, capital program, and capital budget for the County. Grimaldi supervised the execution of the budgets and the preparation of reports concerning the status of the financial and other affairs for New Castle County. There is no doubt that there is a strong link between policy making and budgeting.

Grimaldi was, in his own words, deeply involved in spearheading programs

---

[33] 355 Fed. Appx. 645 (3d Cir. 2009).

[34] 9 *Del. C.* §1341.

regarding the fiscal health of New Castle County, including: (1) eliminating deficits; (2) restructuring the County's debt; (3) restructuring the County employee retirement plan; (4) investing County money in less-risky investments. Grimaldi was, again in his own words, responsible for *initiating and leading* various economic development and social programs including: (1) an anti-heroin marketing program; (2) opposing the Barley Mill rezoning; (3) ethics reform; (4) a new County website; (5) the Route 9 Innovation Center and revitalization program; (6) the Chemours incentive package; (7) serving as the architect of the Delaware Board of Trade project; and (8) the JP Morgan expansion project.

Most importantly, Grimaldi, in his own words, served as a key advisor to the County Executive and caused his public positions on key program issues to be known, such as raising the County minimum wage, supporting marriage equality, opposing the Trans Pacific Partnership Agreement, which initiatives furthered Gordon's popularity with Democratic votes. This implicates what the Third Circuit in *Galli* said what may be the key factor in determining whether an employee is a policymaker. Grimaldi certainly had meaningful input into Gordon's decision making regarding the nature and scope of a number of major County programs and he also spoke on behalf of Gordon in promoting those programs.

Lastly, the Third Circuit in *Freeberry* held that the Manager of the Special

19

Services Department for the County was a policymaker position that required political affiliation. This is a lower-level job than the one Grimaldi held. If it required political affiliation, then there is no doubt that Grimaldi's job did as well.

In summary, Grimaldi was a high-level County employee that (1) had responsibility for all of the County's budgeting; (2) had supervising authority over the executive, administrative and operational departments of the County; (3) initiated and led many County financial programs; (4) initiated and led many County social programs; (5) initiated and led many County economic development programs; and (6) was a key advisor to, and spokesperson for, the County Executive on a number of progressive programs that made the County Executive more popular with his Democratic constituents. There is no doubt that Grimaldi held a high-level policymaking position that required political affiliation. To conclude that Grimaldi, the second-highest County officer who had responsibility over a broad range of County operations and programs, was not a policymaker whose position recognized political affiliation suggests that no County employee was. That is not a reasonable conclusion. Therefore I will dismiss Count III because Grimaldi was unable to allege that his job did not require political affiliation.

## COUNT IV

Grimaldi claims that Gordon told the public and press that he fired Grimaldi

20

for using his position to try to get out of a traffic ticket when Gordon really fired him for complaining to Gordon about McDonough. This is what is known as "stigma-plus" defamation claim.

The United States Supreme Court has held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."[35] When notice and an opportunity to be heard are not provided, a plaintiff may bring "a due process claim for deprivation of a liberty interest in reputation."[36] To prevail, the plaintiff must demonstrate "a stigma to his reputation plus deprivation of some additional right or interest."[37] This is referred to as the "stigma-plus" test, and in the context of public employment, it "has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest."[38]

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s): (1) were made publicly; and (2) were false."[39] "To satisfy

---

[35] *Wisconsin v. Constantineau,* 400 U.S. 433, 437 (1971).

[36] *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006).

[37] *Id.*

[38] *Id.* (*quoting Codd v. Velger*, 429 U.S. 624, 628 (1977)).

[39] *Hill*, 455 F.3d at 236.

21

the 'plus' requirement, a plaintiff must demonstrate that the alleged defamation harming the plaintiff's reputation 'occurs in the course of or is accompanied by extinguishment of a right or status guaranteed by law or the Constitution.'"[40] "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such a deprivation occurs, the employee is entitled to a name-clearing hearing."[41] The Third Circuit has held that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost."[42]

Gordon makes four arguments in an attempt to gain dismissal of Grimaldi's defamation claim:

> 1. The Complaint fails to state a stigma-plus defamation claim because it does not plead the alleged defamatory statement with particularity.

I disagree. Grimaldi alleges that Gordon told the press and public that he fired Grimaldi for using his position to try to get out of a traffic ticket. To satisfy the requirements of pleading defamation, a complaint must only supply sufficient notice

---

[40] *Mun. Revenue Servs., Inc., v. McBlain*, 2007 WL 879004, at *4-5 (E.D.Pa. Mar. 19, 2007)(quoting *Hill*, 455 F.3d at 235).

[41] *Hill*, 455 F.3d at 236.

[42] *Id.* at 238.

of the communications complained of to allow the defendant to defend himself.[43] Grimaldi readily acknowledges that he told the police officer who stopped him, "you know, your Mayor works for me." Grimaldi's allegation is certainly straight forward and leaves no doubt exactly what he is complaining about. I am satisfied that Grimaldi's allegation about his termination together with his admitted statement to the police officer who stopped him adequately puts Gordon on notice of the allegations against him.

> 2. The Complaint fails to state a stigma-plus defamation claim because it impermissibly bases a stigma-plus claim on a true statement.

Gordon argues that Grimaldi's claim fails because it is based on a true statement. The true statement made by Grimaldi is that he told the police officer who stopped him that, "you know, your Mayor works for me." Gordon's authority for his argument is the United States Supreme Court's decision in *Codd v. Velger*.[44] In *Codd*, the plaintiff's personnel file showed that he had been dismissed because while as a trainee police officer he had put a revolver to his head in an apparent suicide attempt. The Supreme Court ruled that the statement was not defamatory because the plaintiff never alleged that the report of his suicide attempt was false. Grimaldi's case

---

[43] *Bushnell Corp. v. ITT*, *Corp.* 973 F. Supp. 1276, 1287 (D. Kan. 1997).

[44] 429 U.S. 624 (1977).

is different. While Grimaldi acknowledges that he told the police officer, "you know, your Mayor works for me," Grimaldi clearly alleges that Gordon's statement about him trying to get out of a traffic ticket was false. Thus, Gordon's argument fails because the allegedly false statement is not the admittedly true statement.

> 3. The Complaint fails to state a defamation claim because it impermissibly bases a stigma-plus claim on "pure opinion," which cannot be defamatory as a matter of law.

Gordon notes that a "pure opinion" is one that is based on stated facts or facts that are known by the parties or assumed by them to exist.[45] Pure expressions of opinion are protected under the First Amendment and are not defamatory.[46] I certainly can not conclude, on a motion to dismiss for the failure to state a claim, that Gordon's statement is pure opinion. Whether Grimaldi tried to use his position to get out of a ticket by saying to the police officer that, "you know, your Mayor works for me," is to me more of a question of fact because it relates to Grimaldi's intent and, as such, one to be decided by the jury after it hears Grimaldi's explanation for why he made that statement.

> 4. The Complaint fails to state a stigma plus defamation claim because it does not allege any harm to Grimaldi's reputation caused by a false statement versus harm caused by his own conduct.

---

[45] *Riley v. Moyed,* 529 A.2d 248, 251 (Del. 1987).

[46] *Id.*

Gordon argues that his statement about Grimaldi is substantially true. Gordon also argues that the fact that he allegedly gave a false reason for terminating Grimaldi can not provide a basis for Grimaldi's stigma-plus defamation claim. Gordon uses this to argue that Grimaldi has not properly stated a stigma-plus defamation claim because Grimaldi has not alleged that Gordon's statement foreclosed Grimaldi from any other employment. Grimaldi alleges, in part, that Gordon's statement damaged Grimaldi's good name, reputation, honor or integrity.

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s): (1) were made publicly; and (2) were false."[47] "To satisfy the 'plus' requirement, a plaintiff must demonstrate that the alleged defamation harming plaintiff's reputation 'occurs in the course of or is accompanied by extinguishment of a right or status guaranteed by law or the Constitution.'"[48] "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' The Third Circuit has held that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the

---

[47] *Hill*, 455 F.3d at 236.

[48] *Mun. Revenue Servs., Inc., v. McBlain*, 2007 WL 879004, at *4-5 (E.D.Pa. Mar. 19, 2007)(quoting *Hill*, 455 F.3d at 235).

job he lost."[49]

Grimaldi has pled the required elements. Grimaldi alleges that Gordon told the press and public that he terminated Grimaldi because he used his position to try to get out of a traffic ticket. Quite simply, Grimaldi was a public employee who was allegedly defamed in the course of being terminated. As I have noted before, the Third Circuit has concluded that this is an adequately-pled stigma-plus defamation claim.[50] Therefore, I will not dismiss Count IV.

## Count V

Grimaldi claimed that he was entitled to a severance package including two months' salary and two months of extended health care benefits. Grimaldi has withdrawn this claim.

## Count VI

Grimaldi claims that the County violated the Delaware Freedom of Information Act by refusing to give him a copy of Cheryl McDonaugh's current resume.

The County argues that McDonaugh's resume is not a public record because it (1) is part of her personnel file, and (2) pertains to pending or potential litigation.

---

[49] *Hill*, 455 F.3d at 238.

[50] *Id.*

<u>Personnel Files</u>

29 *Del. C.* *§*10002 (l)(1) provides that a public record does not include:

> Any personnel, medical or pupil file, the disclosure of which would constitute an invasion of personal privacy, under this legislation or under any State or federal law as it relates to personal privacy.

McDonaugh was the successful applicant for the Risk Manager's job. Under Delaware law, it is not an invasion of the personal privacy of a successful applicant for a job for the government to disclose to the public information the successful applicant disclosed during the application process.[51] The information submitted by unsuccessful applicants is treated differently because disclosure may embarrass or harm them.[52] Their present employers, should they seek new work, may learn that other people were better qualified for a competitive appointment. A successful applicant would not be subject to the kind of embarrassment that the unsuccessful applicant would face.[53] The successful applicant's identity is known and the fact that they have decided to leave their former employer or current position is also known. In such cases, the public's legitimate interest in knowing information about the

---

[51] *Del. Op. Atty. Gen.* 99-IB03 (April 28, 1999).

[52] *Id.*

[53] *Core v. U.S.* Postal Service ,730 F.2d 946, 949, (4th Cir. 1984); *Arizona Board of Regents v. Phoenix Newspapers, Inc.,* 806 P.2d 348, 352 (Ariz. 1991).

27

candidate who got the job outweighs the privacy interest of the successful applicant.[54]

Thus, I conclude that the County's disclosure of McDonaugh's resume would not constitute an invasion of her personal privacy.

Pending Litigation

29 *Del. C.* §10002(l)(9) provides that a public record does not include:

> Any records pertaining to pending or potential litigation which are not records of any court.

The County argues that Grimaldi's request for McDonaugh's resume pertains to this litigation because it would support his belief that McDonaugh never graduated from the University of Delaware. Grimaldi argues that McDonaugh's resume does not pertain to this litigation because it will not prove or disprove any element of the claims that he is pursuing. The rationale for the "pending litigation exception" is that it recognizes the practical reality that when parties to litigation against a public body seek information relating to the litigation, they are not doing so to advance "the public's right to know," but rather to advance their own personal stake in the litigation.[55] Delaware courts will not allow litigants to use FOIA as a means to obtain

---

[54] *Id.*

[55] *ACLU v. Danberg*, 2007 WL 901592, at *4 (Del. Super. March 15, 2007) (citing *Mell v. New Castle County,* 835 A.2d 141, 147 (Del. Super. 2003).

discovery which is not available under the Court's rules of procedure."[56]

I have concluded that Grimaldi's request for McDonaugh's resume is very much related to this litigation because she and her resume are part of one of Grimaldi's claims against Gordon. The "Background" portion of Grimaldi's complaint has 31 paragraphs. Ten of them involve McDonaugh. In Count IV of Grimaldi's complaint, he alleges, in part, that Gordon fired him for criticizing McDonaugh. Grimaldi goes on to allege that Gordon told the press and public that he fired Grimaldi for using his position to get out of a traffic ticket in an effort to cover up his real reason for firing Grimaldi. Thus, if McDonaugh's resume shows that she did not graduate from the University of Delaware – which Grimaldi certainly believes, as evidenced by his allegations in paragraph 19 of the Complaint – then it would tend to prove Grimaldi's allegation that the real reason that Gordon fired him was for complaining about McDonaugh, a woman that Gordon was allegedly very close to. Thus, I conclude that McDonaugh's resume is not a public record because it falls within the "pending litigation exception." Accordingly, I will dismiss Count VI of Grimaldi's Complaint because it seeks information that is not a public record under Delaware's Freedom of Information Act.

---

[56] *ACLU,* 2007 WL 901592.

**CONCLUSION**

I have dismissed Counts I, II, III and VI.  I did not dismiss Count IV.   Grimaldi

has withdrawn Count V.

IT IS SO ORDERED.

Very truly yours,

*/s/ E. Scott Bradley*

E. Scott Bradley

ESB/sal
oc:    Prothonotary